**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lester J. MILLET, Jr.,
Defendant-Appellant.**

No. 76–3783.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1977.

Rehearing and Rehearing En Banc
Denied Oct. 19, 1977.

Julian R. Murray, Jr., New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Walter J. Rothschild, Cornelius R. Heusel, Mary Williams Cazalas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before GOLDBERG and FAY, Circuit Judges, and DUMBAULD,* District Judge.

FAY, Circuit Judge:

Lester J. Millet, appellant, is a former sheriff and tax assessor of St. John the

* Edward Dumbauld, District Judge of the Western District of Pennsylvania, sitting by designation.

Baptist Parish, Louisiana. On March 11, 1976, the Grand Jury returned a six-count indictment charging appellant with extortion in violation of the Hobbs Act, Title 18, United States Code, Section 1951. Defendant Millet entered a plea of not guilty as to all counts on March 24, 1976.

Pre-trial motions included a motion for speedy trial and a motion for discovery and inspection. The court held the speedy trial motion moot because a trial date had been set for Monday, June 28, 1976. With respect to the motion for discovery and inspection, the Government and the defense at a pre-trial hearing before the Magistrate reached an agreement as to what would be turned over to the defense.

On June 22, 1976, six calendar and three working days before trial, the Grand Jury returned a seven-count superceding indictment. The superceding indictment additionally charged the defendant with attempted extortion in all of the former counts as well as one new substantive count. The court denied a defense motion to dismiss the superceding indictment.

The trial began on June 28, 1976 and continued into the third week. The jury returned the following verdict: Guilty as to Counts II, III, IV and V; Not Guilty as to Counts I and VI. The court declared a mistrial as to Count VII because the jury was unable to reach a verdict on that count. Subsequently, the court sentenced the defendant to six months imprisonment on Count II, suspended the sentences as to Counts III, IV and V, and imposed a three year period of probation following the defendant's release from custody. From the judgment and sentence as to Count II, the defendant brings this appeal.[1] We affirm.

I

The appellant assigns four grounds of error, the first of which is appellant's contention that the trial court incorrectly denied appellant's motion for new trial after the Government failed to comply with its pre-trial discovery agreement. Prior to the trial, defendant filed a group of standard discovery motions including a request for a copy of the Grand Jury testimony of all witnesses favorable to the defendant, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendant further requested that the desired evidence be made available to the defense prior to trial because of the complex nature of the case and that any problems with the materiality or exculpatory nature of the evidence be resolved by the court *in camera*. The Government's written answer to the defense motion asserted that it had no *Brady* material in its possession. The matter came before the Magistrate at a pre-trial hearing at which time counsel for the Defendant asserted that the motion was a bit unique from the "standard type of *Brady* motion" in that he was specifically requesting access to the Grand Jury testimony of witnesses who were not to be called at trial. [In accordance with the Jencks Act, 18 U.S.C. § 3500, the Government already consented to give copies of the testimony of all Grand Jury witnesses the Government intended to call at trial.] The Magistrate's response was that rather than conduct an extensive *in camera* inspection for possible *Brady* material, the Government might turn over the transcripts in question to the defense to allow it to conduct the perusal. To this suggestion the prosecutor responded:

As to *Brady* material, as to determining what is Brady material, I don't believe that it's the Government's position in this or any other case, that we should be required to produce everything that the Grand Jury has heard. But I think a reasonable alternative might be that on these counts on which the Defendant is

---

1. Appellant points out that, although he was convicted on four counts, he is only appealing as to Count II for which he received a sentence of imprisonment. Appellant explains that this is due to his being neither a rich man nor a pauper, but rather a man of modest means who has expended his savings on defending these charges thus far. However, we possess no presumption of guilt as to Count II based on the fact that appellant did not appeal the verdict on the other counts.

charged, that the Government would offer to turn over at least in advance now, a list of all the witnesses who were called before the Grand Jury on the counts charged in the indictment and that at a reasonable time prior to trial, preferably at the time of presenting Jencks Act, we would make that, the testimony of all those witnesses available, both Jencks Act material and the other witnesses who may or may not be witnesses at trial.

The essence of the agreement, then, was that the Government would give the defendant first a list and then the full testimony of all the witnesses who appeared before the Grand Jury and testified regarding the various counts in the indictment. The Government agreed that a reasonable time for producing copies of these witnesses' testimony would be 5 P.M., Thursday, June 24.

Appellant contended then, and contends now, that the material the Government delivered on June 24 failed to include the testimony of "numerous" Grand Jury witnesses.[2] Appellant notified the Government the next day that it did not consider the Government to have complied with its pre-trial agreement. The defense did not raise the matter prior to or during the trial purportedly because, without a transcript of the Magistrate's hearing, appellant's counsel was not absolutely certain that his recollection of the extent of the agreement was correct. After the trial was completed, appellant raised this issue before the district court in a motion for a new trial, contending that it was prejudiced by the Government's non-compliance.[3]

Defense counsel also filed a motion for issuance of a subpoena duces tecum in order to review the undisclosed testimony prior to the hearing on his motion for a new trial. The Government filed a motion to quash the subpoena duces tecum, contending that it had fully complied with the pre-trial requirements of Brady and Jencks, supra, and that compliance with the subpoena may interfere with a continuing investigation of appellant on matters other than those involved in the indictment and about people other than appellant.

The district judge reviewed in camera the Grand Jury testimony requested by appellant which was not furnished by the Government. This included testimony of approximately 50 witnesses. Finding that the undisclosed Grand Jury testimony would not have affected the judgment of the jury or the outcome of the trial on the question of guilt or on the issue of punishment, the district court denied appellant's motion for new trial and granted the Government's motion to quash the subpoena duces tecum.

Appellant maintains in this appeal that he had relied upon the pretrial agreement made by the Government, as noted above, and that the Government should not be allowed to breach said agreement with impunity. Appellant contends that such a breach denied him due process of law.

The record in this case reveals that the court below reviewed the materials in camera and took no action favorable to the defendant, implying that the district court found no breach. The appellant respectfully suggests that the district court focused on the wrong issue, namely compliance with Brady requirements rather than a pre-trial agreement voluntarily made by the Government.

■ At this point of the proceedings we find appellant's non-compliance argument to be without merit. Unequivocally, the Government has the obligation to fully com-

---

2. Eighty-seven witnesses appeared before the Grand Jury in the investigation of this case and related matters. Prior to trial the Government turned over to the defendant Grand Jury testimony of 34 witnesses, leaving the testimony of about 50 Grand Jury witnesses undisclosed to the defense. F.B.I. statements of an additional 30 witnesses were also turned over to appellant.

3. Defendant claims that he was partially relying on the materials promised by the Government for the preparation of his defense. Defendant's counsel intended to use the testimony of various Grand Jury witnesses rather than personally interview them.

ply with any and all agreements and promises it makes with and to defendants and we would interpret any non-compliance as a serious breach of the Government's duty, as well as a possible violation of a defendant's constitutional due process rights.[4] However, under the facts of the instant case, we need not decide whether the Government breached its agreement because we find that appellant waived his right to complain about any possible non-compliance on the part of the Government.

█ The alleged agreement was made eight weeks before trial. The material was supposed to be delivered the Thursday before trial began. Defense counsel knew at least by Friday before the trial started that the Government had not complied with the agreement, if that were correct. The defense did not file a motion for continuance nor request the trial judge prior to trial to consider the matter. Neither did the defense offer any objection, indication or remark to the trial judge during the Government's case regarding the Government's purported non-compliance. There was no request for an adjournment or short recess after the Government's case in an attempt to use the material or obtain witnesses for the defendant. Defendant made no motion, no objection—he did nothing, until the trial was over and the jury had convicted him. During almost three weeks of trial and several days prior to trial, appellant had ample opportunity to assert his claim. Although appellant asserts prejudice, he has made no showing that he suffered as a result of any non-disclosure of all grand jury transcripts. This Court is of the opinion that raising this issue by way of a post-trial motion was so untimely as to amount to a waiver. *See United States v. Urdiales*, 523 F.2d 1245, 1247 (5th Cir. 1975),

4. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Ross*, 511 F.2d 757 (5th Cir. 1975); *United States v. Scanland*, 495 F.2d 1104 (5th Cir. 1974).

5. It is undisputed that the Government possessed no new information when it sought the superceding indictment than what it had when filing the original indictment. Allegedly the

*cert. denied*, 426 U.S. 920, 96 S.Ct. 2625, 49 L.Ed.2d 373.

## II

Appellant next submits that the trial court erred in denying his motion to dismiss the superceding indictment. Appellant concedes that the Government notified appellant that it intended to seek a superceding indictment prior to June 22, 1976, the date the superceding indictment was filed. However, appellant claims, the Government gave him the impression that the superceding indictment was designed only to correct some clerical errors and make some stylistic changes, when in fact the superceding indictment contained substantial changes by the addition of attempt charges and one entirely new and different substantive count.

Appellant filed a motion to dismiss the superceding indictment seeking alternatively to have the Government proceed on the original indictment, that the new count be dismissed, or, that if the superceding indictment were allowed to stand, that the new count be severed from the remaining counts. The trial court denied the motion in all respects.[5]

Appellant asserts that the Government's last minute changes in the pending charges substantially interfered with his preparation for trial and jeopardized his right for speedy trial,[6] presenting him with the unfair choice of relinquishing his right to a speedy trial or his right to adequate trial preparation and specific knowledge of the charges against him.

█ We find the trial court did not err when denying the motion to dismiss the superceding indictment. This Court has held that a superceding indictment may be

addition of one more count was a strategical decision concerning the admissibility of system and intent as evidence.

6. Due to the personal strain and desire to negate the charges against him, appellant had filed a motion for speedy trial early in the proceedings. The trial court denied this motion as the date for trial had been set.

returned at any time before a trial on the merits. *United States v. White*, 524 F.2d 1249, 1252–53 (5th Cir. 1975), cert. denied, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375. In the instant case, the superceding indictment was filed six days before the trial on the merits commenced. Moreover, count two, the only count before us, was substantially identical in the two indictments.

### III

■ Appellant's third contention of error concerns the trial court's denial of appellant's motion for judgment of acquittal. Appellant contends the evidence is legally and factually insufficient [7] to sustain a conviction on Count II.[8]

Viewing the evidence in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find the evidence sufficient to sustain appellant's conviction on Count II. The jury could reasonably, logically, and legally infer from the evidence presented that appellant was guilty beyond a reasonable doubt of violating the statute under which he was charged. This allegation of error is without merit.

### IV

■ Appellant lastly alleges that the Government committed reversible error during its closing argument in rebuttal. The defense, in closing argument, made some comments about its theory of the facts and one of the principal Government witnesses. On rebuttal, the Government retorted with its assessment of the defense's argument.[9] Appellant contends that the Government's words, the last ones to be heard by the jury, must have had a devastating impact upon the jury's impression of the defense, denying appellant a fair trial. Appellant notes that he did not object at that point because he did not want to accentuate the Government's comments and that the trial court later denied appellant's request for a curative instruction.[10]

Having reviewed the record and the content of the closing arguments of the Government and the defense, we find that the Government's remarks were not improper and were an appropriate reply to defense counsel's argument. The Government's comments could only have had an insubstantial and insignificant impact on the jury's verdict, foreclosing a finding of reversible error. *See United States v. Maizumi*, 526 F.2d 848, 850–51 (5th Cir. 1976); *Lipscomb v. Estelle*, 507 F.2d 708, 710 (5th Cir. 1975); *United States v. Arenas-Granada*, 487 F.2d 858, 859 (5th Cir. 1973); *United States v. Rhoden*, 453 F.2d 598, 600 (5th Cir. 1972). This argument, like the ones above, lacks merit.

The judgment and conviction are AFFIRMED.

7. Appellant claims that the crime of extortion requires the obtaining of another's property with the other's consent *induced by the wrongful use of fear, or under color of official right*. Appellant contends that the evidence failed to show any reasonable fear on the part of the alleged victim, any threat, or that appellant had official power to carry out the alleged extortion. With these essential factors lacking, appellant argues, the evidence is insufficient and the conviction improper.

8. See n. 1 *supra*.

9. The section of the Government's rebuttal argument about which appellant now complains is the following:

The only thing that . . . I feel that I have an obligation and duty to defend that Mr. Murray [defense counsel] brought up, the only point is the cheap character assassi-

nation of Johnny Roberts [Government witness] . . . Mr. Murray gets in here, and in closing argument, when Johnny Roberts is out somewhere, and takes this cheap shot at him by saying that he was involved in some way with Trosclair . . . I have never seen such a cheap tactic.

Appellant submits that the Government's repeated use of the word "cheap," in its various phrases, prejudiced the jury against the appellant and his counsel.

10. In denying the appellant's request for a special jury instruction and his motion for mistrial, the district court, without the jury present, stated: "Frankly, I might say that I don't approve of such tactics myself, .. . . but I don't think it was so prejudicial that I should make any comment to the jury."