UNITED STATES of America,
Plaintiff-Appellee,

v.

Andrew Jackson ROBERTSON,
Defendant-Appellant.

No. 76–1994.

United States Court of Appeals,
Fifth Circuit.

Oct. 5, 1977.

Rehearing En Banc Granted
Dec. 1, 1977.

Joseph S. Chagra, El Paso, Tex., court-appointed, for defendant-appellant.

Jamie C. Boyd, U. S. Atty., San Antonio, Tex., Frank B. Walker, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before MORGAN and HILL, Circuit Judges, and NOEL, Senior District Judge.*

* Senior District Judge for the Southern District of Texas, sitting by designation.

NOEL, Senior District Judge.

Andrew Jackson Robertson appeals from his conviction for conspiring to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The two principal grounds[1] upon which Robertson seeks reversal of his conviction are that the district court erroneously admitted into evidence: (1) the fruits of a search pursuant to an invalid search warrant and (2) certain admissions made by Robertson during the course of a discussion between appellant, a co-conspirator, and two Drug Enforcement Administration (DEA) agents, which Robertson characterizes as plea bargaining.

I. Search Warrant

■ On December 16, 1975, DEA agents executed a search warrant at a residence in El Paso, Texas. In the course of the search, the agents seized various chemicals and laboratory equipment used in the preparation and manufacture of methamphetamine. Appellant Robertson, a co-conspirator named William R. Butigan, Butigan's wife, and another female were arrested at the residence at the time of the search.

Robertson argues that the search warrant was invalid because the affidavit submitted in support thereof relies on the tips of two unnamed informants, but fails to meet the criteria of *Aguilar-Spinelli*[2] for establishing probable cause through informants' tips. Specifically, Robertson urges that the affidavit is insufficient to establish probable cause because the affidavit does not tell how one of the two informants obtained his information. This contention is without merit.

The affidavit states:

Affiant has received information from a person whom he knows to be reliable, credible, and trustworthy, that on October 16, 1975, William R. BUTIGAN ordered glassware, suitable for use in a chemical laboratory. He also ordered Pheynyl-2-Propanoe and Methlyamine. On October 20, 1975, William R. BUTIGAN picked up his order of Phenyl-2-Propanoe and Methlyamine and ordered a quantity of Mercuric Chloride. Affiant has contacted a chemist employed by the Drug Enforcement Administration who told Affiant that the chemicals Phenyl-2-Propanoe, Methlyamine, and Mercuric Chloride are precursors used in the manufacture of methamphetamine. While I do not desire to name this informant for security reasons, he is a business man in El Paso, Texas who has never been arrested and who enjoys a good reputation in the community in which he resides.

Affiant has received further information from a person whom he knows to be reliable, credible, and trustworthy who related that William R. BUTIGAN is a chemist for a clandestine laboratory located at his residence at 4537 Emerson Road. The laboratory is of a portable nature and could be stored anywhere on the curtilage on the above-described premises, including a silver Cadillac automobile parked on the premises and a garage located on the premises. Informant received this information within the past 48 hours. While I do not desire to name the informant who provided this information for security reasons, I believe this informant to be reliable, credible, and trustworthy because he has given information on numerous occasions in the past concerning narcotics offenses committed by individuals in El Paso County, Texas, and on each and every occasion his information has proven to be true, reliable, and correct.

1. Appellant also asserts that the trial court erred: (1) by not giving a cautionary instruction concerning certain hearsay statements and declarations made by a co-conspirator to agents at a time when the alleged conspiracy had terminated, and (2) in holding the evidence to be sufficient to sustain the conviction because the evidence was insufficient to prove a conspiracy as alleged in the indictment. We find these points of error to be without merit and not worthy of discussion.

2. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

Robertson's attack is on the information supplied by the second informant referred to in this affidavit.

Appellant's assertion that the affiant did not tell how this second informant received the information about the clandestine laboratory is well-taken, but that does not end our inquiry. This Court has held that

> [w]here insufficient information about the tip and the tipster is available to justify reliance upon it alone, investigating officers may supplement the tip by surveillance of the subject or corroboration of key elements of the tip from relatively objective sources.

*United States v. Brennan*, 538 F.2d 711, 720 (5th Cir. 1976). Here, the tip of the second informant to the effect that Butigan was a chemist for a clandestine laboratory located at his residence was corroborated by another informant, a businessman in the community, who gave a detailed description of chemicals and equipment purchased by Butigan. Furthermore, a government chemist confirmed that the chemicals were the sort used in the manufacture of an illicit drug. We find that the reliability of the second tip was sufficiently established by the corroborating information supplied by the businessman and the government chemist. As we have observed, "[a] probable cause issue can rarely, if ever, be resolved with the exact logic of an Euclidean theorem." *United States v. Chester*, 537 F.2d 173, 175 (5th Cir. 1976). We conclude that the affidavit as a whole contained sufficient information to enable the magistrate to find probable cause. *See id.*

II. "Plea Bargain" Discussion

■ Robertson contends that a conversation between himself, co-conspirator Butigan, and two DEA agents constituted plea bargaining and therefore certain admissions made by Robertson during the course of that conversation should have been excluded from evidence under Fed.R.Ev. 410, Fed. R.Crim.P. 11(e)(6), and *United States v. Ross*, 493 F.2d 771 (5th Cir. 1974). To assess this contention, the conversation must be set in proper context.

Appellant and the other three arrestees were administered the *Miranda*[3] warnings by DEA Agent Widener at the private residence in El Paso where they were arrested. The four arrestees were then taken to the DEA offices in El Paso for processing. As the agents were preparing to take the arrestees to the United States Courthouse for arraignment, Butigan on his own initiative indicated that he was willing to tell everything but first he wanted to talk to Robertson. One of the arresting agents on cross-examination testified as follows concerning Butigan's request:

Q And then what did Mr. Butigan tell you at that particular time, sir?

A Initially?

Q Yes, sir.

A He said that he wanted to cooperate and tell us everything, and the reason for this he wanted to know if it would help his wife out.

Q Okay. So what did you tell him, sir?

A I told him that I couldn't promise him anything, but that we were anxious to have him cooperate with us and that any cooperation he made would probably help him out in the long run.

Q Okay. Did he do this voluntarily, sir? I mean did he bring this up himself?

A Yes, sir, we were on our route to take him to the Magistrate when he brought—

Q You were getting ready to take him to the Magistrate, and he tells you voluntarily that he would like to cooperate in order to try and help his wife, is that correct?

A Yes, sir.

Q And you told him, of course, that you couldn't promise him anything, is that more or less what you told him?

A Yes, sir.

Q Now, did Mr. Butigan seem concerned about his wife?

A Yes, sir.

Q What was the next thing that happened in regard to Mr. Butigan cooperating?

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

> A He stated before he said anything, though, that he wanted to talk it over with Mr. Robertson.[4]

Butigan was then permitted to confer privately with Robertson for a few minutes. Thereafter, two DEA agents questioned Butigan and Robertson in the parking lot of the DEA offices about their manufacture and sale of methamphetamine. Most of the questions were answered verbally by Butigan with Robertson indicating his agreement with Butigan by nodding his head.

Robertson's counsel argued in the court below that

> the only reason that the Defendants [Butigan and Robertson] talked to the officers was in order to gain leniency for their wife and girl friend, whoever the other girl was, and under these circumstances, Your Honor, the confessions that they gave cannot be said to be voluntarily given. In fact, they were given in hopes of leniency that would be given to their wife and the girl friend . . which, in fact, did occur. . . .[5]

Robertson has abandoned the theory pursued in the district court that the admissions were involuntary and argues instead that the fact that the admissions were made in an attempt to gain leniency for the two women demonstrates that the admissions were made in the course of plea bargaining and as such were privileged. In support of this theory appellant cites *United States v. Ross*, 493 F.2d 771 (5th Cir. 1974).

In *Ross* the defendant, upon being arrested, offered to take the blame for some drugs found in his car if his wife, who was also present, was let off. The arresting agent had already talked to the U.S. Attorney, who apparently had agreed not to prosecute the wife if Mr. Ross confessed. Although the arresting agent testified that he did not strike a bargain to immunize Ross' wife from prosecution, he did agree to discuss the matter with the U.S. Attorney and

the wife was released from custody. Later, the U.S. Attorney decided to prosecute both of the Rosses. At their joint trials, the prosecution was allowed to introduce testimony that Mr. Ross had offered to take the blame for everything if his wife would be released. Upon appeal of their convictions this Court held that the admission of the conversation between the agent and Ross was reversible error because:

> We have no doubt that Ross' discussion with the agent, especially since the prosecutor had already been consulted, must be classified as an effort to bargain a plea. Moreover, it is undisputed that in pursuance of it the wife was released and went back to Waco. For reasons not readily apparent from the record, *the proposed bargain was not consummated*. At least we know that *the wife was prosecuted* and that both she and her husband pleaded not guilty.

493 F.2d at 775. (emphasis supplied)

It is true that *Ross* and the present case involve a similar and somewhat unusual factual context. In both cases the negotiating defendant was negotiating not about his own plea or leniency for himself, but about leniency for a third person. Despite the similar nature of the negotiations here and in *Ross*,[6] appellant can take no comfort in *Ross* because there is a fundamental distinction between the two cases. In *Ross* the proposed bargain was not consummated; the wife was prosecuted. Thus, *Ross* merely stands for the proposition that evidence of negotiations for the benefit of a third party must be excluded if a bargain is not consummated. This is so because:

> it is inherently unfair for the government to engage in such an activity, only to use it as a weapon against the defendant when negotiations fail.

*Ross*, 493 F.2d at 775.

Here, the negotiations succeeded and the bargain was consummated. The leniency sought by Robertson and Butigan for the two women was obtained. Hence, Robert-

---

4. Record, vol. II, at 258–260.

5. *Id.* at 154.

6. We assume, without deciding, that the DEA agents had apparent authority to engage in plea bargaining with appellant. *See U. S. v. Herman*, 544 F.2d 791, 798 n. 11 (5th Cir. 1977). *Cf. 2 Weinstein's Evidence* ¶ 410[07] at 410–41.

son stood trial, even though the bargain was consummated, because the bargain was not for a plea of guilty to a reduced charge, but for leniency for third persons. The Government kept its side of the bargain, Robertson obtained what he sought, and there is therefore no reason to exclude the admissions made by Robertson pursuant to his part of the bargain. To hold otherwise would place the Government in a "heads they win, tails we lose" position.

Furthermore, Fed.R.Crim.P. 11(e)(6) and Fed.R.Ev. 410 do not apply to this situation.[7] Those two rules provide that: evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

The present case, however, does not involve pleas or offers to plead because appellant was not negotiating his own plea, but was instead negotiating for leniency for a third person.

■ In situations where the defendant enters into negotiations about his own plea, Fed.R.Crim.P. 11(e)(6) and Fed.R.Ev. 410 render inadmissible testimony relating to such negotiations, if the negotiations fail and the defendant goes to trial. If the plea bargain is consummated, then the case will be disposed of by a plea of guilty or nolo contendere without the necessity of a trial. Where, as here, the defendant is bargaining solely for leniency for third persons, it is within the contemplation of the parties that the negotiating defendant will go to trial, even if the negotiations are successful. This situation is beyond the scope of Rule

11(e)(6) and Rule 410. *Ross* holds that under these circumstances evidence relating to the negotiations is inadmissible if the negotiations fail. We hold today that if a bargain is consummated and leniency is obtained for a third party, admissions made pursuant to that bargain are not privileged.[8]

AFFIRMED.

LEWIS R. MORGAN, Circuit Judge, dissenting:

The majority holds that because defendant Robertson received the object of his initial bargaining—the Government's "going easy" on his wife—admissions made by defendant during the course of this bargaining could be introduced as evidence of his guilt. Because I believe that Fed.R.Crim.P. 11(e)(6)[1] and two opinions handed down by this court—*United States v. Ross*, 493 F.2d 771 (5th Cir. 1974) and *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977)—compel a different result, I respectfully dissent. In *Ross*, we held that remarks uttered during the course of plea bargaining could not be used against the defendant at trial. 493 F.2d at 775. While that panel did observe that the bargain was not consummated, in that the Government prosecuted the women friends of the defendant, it did not condition its holding on this narrow factual base. In *United States v. Herman, supra*, this court was even more explicit on this issue: "Statements are inadmissible if made at any point during a discussion in which the defendant seeks to obtain concessions from the government in return for a plea." 544 F.2d at 797.

Rule 11(e)(6)[2] also provides that any statement made in connection with an offer to plead guilty is not admissible in a criminal proceeding against the person who made the offer. The majority states that Rule 11 is inapplicable because the defend-

---

7. The applicability of these two rules was not considered in *Ross* because the pertinent provisions of those two rules were added by amendment in 1975 after *Ross* was decided.

8. We are not confronted by and do not decide the extent to which promises made during the course of such bargaining might render any admissions involuntary under the totality of the circumstances.

1. Fed.R.Ev. 410 contains the same language found in Fed.R.Crim.P. 11(e)(6).

2. Rule 11(e)(6) provides:

Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of state-

ant "was not negotiating his own plea, but was instead negotiating for leniency for a third person." Yet, nowhere do I read any language that qualifies the rule according to the motives of the person offering to plead. Thus, whether that person is offering to plead guilty in order to be tried for a lesser crime or to gain leniency for a third person is of no importance in analyzing Rule 11. Rather, once an offer to plead guilty is withdrawn, whatever the motives for the offer, Rule 11 prohibits the use against the defendant of any statement made in connection with that offer. Of course, one could contend that no offer to plead guilty was made in this case. While it is true that defendant made no such explicit offer, the only reasonable interpretation that one can attach to his offer to "tell everything" if the Government would go easy on his wife is that this statement was in effect an offer to plead guilty. Accordingly, Rule 11(e)(6) would prevent the use against defendant of statements made during the course of this offer. Therefore, for the above reasons, I dissent.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, and RUBIN, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

ments made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo

contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.