UNITED STATES of America,
Plaintiff-Appellee,

v.

John A. GEDERS, Defendant-Appellant.

No. 77–5037.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1978.

Rehearing En Banc Granted
March 27, 1978.

Arnold D. Levine, Tampa, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Anthony J. LaSpada, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, DYER, and FAY, Circuit Judges.

FAY, Circuit Judge:

After remand from the United States Supreme Court,[1] the defendant-appellant, John A. Geders, was tried with several co-defendants and was convicted of conspiracy to import marijuana, importation of marijuana, and possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 952(a), 960(b), and 841(a)(1). Geders testified in his own behalf at the trial and raised the defense of entrapment. The government was permitted to cross-examine Geders and to introduce rebuttal testimony concerning post-indictment statements made by Geders at a meeting with the Assistant United States Attorney and federal investigators in May, 1973 in order to establish his predisposition to engage in narcotic-related activities and to attack his credibility as a witness. Geders vigorously objected to the use of statements made by him during this meeting on the ground that such statements were made during the early stages of the plea bargaining process.

We have concluded that the trial court erroneously permitted use of statements made by Geders during the meeting in May of 1973, and because introduction of these statements was not harmless beyond a reasonable doubt, we remand the case to the trial court for further proceedings consistent with this opinion.

## I. FACTS

The facts, considered in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), indicate that the defendant Geders was involved in a conspiracy with Randy Kilgore, James Mahoney, Michael Fink, Fred Fink, and Stephen Patrick to transport a substantial quantity of marijuana into the United States from Colombia, South America. Formation of the conspiracy and acts in furtherance thereof took place between September 1, 1972, and November 26, 1972.

1. The defendant's first conviction arising from the facts of this case was reversed by the Supreme Court because he was deprived of assistance of counsel in violation of the Sixth Amendment. *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976).

During October and November of 1972 the participants in the conspiracy traveled from Tampa, Florida, to Jacksonville and Daytona Beach, Florida, to ready plans for importation of the marijuana. Geders also flew to Colombia, South America, to meet with Pedro Davilla, the contact abroad, who was a Colombian citizen and a fugitive from United States jurisdiction. In late October or early November Randy Kilgore met with an individual named David Butler in Miami, Florida, and agreed to pay Butler $10,000 if he would pilot a small plane to Colombia to pick up the marijuana. Unbeknownst to the conspirators, Butler was a government informant and immediately informed Customs officials of the proposed plan. Butler was instructed to cooperate in the plan and to keep Customs informed. The conspirators agreed that the plane would depart from Tampa on November 26, 1972, and would land in Lehigh Acres, Florida, later the same day upon return from Colombia.

The plane departed from Tampa at approximately 5:00 A.M. on November 26, 1972, with Geders and James Mahoney accompanying Butler, the pilot-informant. The plane flew to Colombia, and, after loading approximately 1000 pounds of marijuana, returned to Lehigh Acres between 8:00 P.M. and 9:00 P.M. on the evening of the 26th. While the plane was en route to Colombia, Customs officials began surveillance of the landing area at Lehigh Acres in preparation for seizure of the contraband and the participants upon their return from Columbia. All of the conspirators were in custody by the following day.

The meeting between Geders, Assistant United States Attorney Oscar Blasingame, Customs officer Lowell Miller, Charles Hudson of the Bureau of Alcohol, Tobacco, and Firearms, and certain other government officials took place in May of 1973. Although the meeting took place after indictment at a time when Geders was represented by counsel, his attorney was not present at his insistence.[2] Blasingame informed Geders of his *Miranda* rights and that the government wished to discuss the activities of Pedro Alvarez and did not wish to discuss Geders' pending case. Specifically, Blasingame informed Geders that "there would be no discussion about any matters related to the pending case." Geders then related to the investigators that he had traveled to New York to convert large bills into small bills for Alvarez and that title to a Porsche automobile owned by Alvarez had been placed in his name.

Prior to testifying on his own behalf, Geders moved in limine to exclude any cross-examination concerning statements made by him during the meeting in May of 1973. The court deferred ruling on the motion until completion of direct examination, in which Geders set forth the defense of entrapment. The court then denied Geders' motion and permitted cross-examination concerning statements made by him during the meeting as evidence for the jury to consider regarding the issue of whether Geders possessed a predisposition to commit the offenses in question and to attack his credibility. The court also permitted the government to introduce rebuttal testimony by Assistant United States Attorney Blasingame and Special Agent Hudson concerning statements made by Geders at the May, 1973, meeting.

## II. MERITS

The parties to this appeal have vigorously contested the defendant's contention that the district court erred in permitting the use of plea-related discussions, and clash head on as to the applicability of *Santobello v. New York*,[3] *United States v. Herman*,[4] and Rule 11 of the Federal Rules of Crimi-

---

**2.** Geders did not want his attorney present because he feared that he might be in danger if his attorney knew of the meeting since he believed that his attorney also represented Pedro Alvarez, whose activities were the primary subject of discussion. Although the government endeavors to establish that the defendant

voluntarily waived counsel, we opine that the waiver of counsel argument does not relate to the primary issue before this court.

**3.** 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

**4.** 544 F.2d 791 (5th Cir. 1977).

nal Procedure[5] to the facts of this case. When pared to the core, the government's argument is that statements made by the defendant at the meeting in May of 1973 are admissible because the statements were not in connection with nor relevant to a plea or an offer to plead guilty, and that no agreement was struck with the defendant prior to the meeting as to the use of statements made by him during the meeting. It is necessary to closely analyze the teachings of *Herman* and *Santobello* before assessing the merits of the parties' contentions.

In *Herman,* this court was confronted with the issue of whether Rule 11(e)(6) of the Federal Rules of Criminal Procedure should be construed to exclude statements made by an accused murderer to postal inspectors to the effect that he would plead guilty to robbery and produce the gun if the murder charges would be dropped.[6] The focal issue in *Herman,* as in the case at bar, was whether the defendant's statements were in connection with and relevant to the plea bargaining process. Judge Goldberg, in his well reasoned opinion held[7] that:

. . . . Statements are inadmissible if made at any point during a discussion in which the defendant seeks to obtain concessions from the government in return for a plea. 544 F.2d at 797.

The Court further stated that whether statements are made during the plea bargaining process is not to be determined according to hypertechnical distinctions and that the defendant need not accompany all admissions with a "preamble explicitly demarcating the beginning of plea discussions." *Id.* at 797.

■ As Judge Goldberg so aptly stated: If Congress had wanted plea bargaining to be formalized, ritualized or structural, the rules could have so provided. But Congress, believing that plea bargaining is a necessary ingredient in criminal prosecutions of the magnitude we face, wanted an accused freely to discuss his or her plight, the probability of punishment and the possible range thereof. Having embarked on the plea bargaining route, Congress did not intend the accused to be convicted by the bargaining words Congress had encouraged him or her to utter. We cannot ascribe to Congress any intention to sandbag an accused in his or her plea bargaining sessions. The government, as one of the dancing partners, should not be able to lead its partner to a trap door on the dance floor.

*Id.* at 797, 798.

The rationale supporting a liberal interpretation of when plea bargaining commences is justified by the desire to encourage free and candid discussion between the

**5.** Rule 410 of the Federal Rules of Evidence is identical in wording. These rules provide:

Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

**6.** The government in *Herman* argued that the statements made by the defendant to the postal

inspectors could not have been in connection with an offer to plead guilty because the inspectors lacked authority to negotiate such a plea. The court rejected the government's argument holding that the dispositive issue is whether the defendant perceived that the government officials possessed negotiating authority and not whether they actually possessed such authority. We opine that it can not be disputed that Geders perceived that the Assistant United States Attorney possessed authority to negotiate.

**7.** Judge Gee, specially concurring in *Herman,* stated that much of Judge Goldberg's majority opinion is pure dicta. Although we express no opinion as to the validity of Judge Gee's assessment of the majority opinion in *Herman,* we accept Judge Goldberg's language because his reasoning is compelling and because the issue at hand has not been foreclosed by contrary authority.

government and the accused and to prevent plea bargaining from being used as a trap for the unwary. With these goals in mind, we interpret *Herman* to say that when the government and the defendant discuss his criminal activities, each side entertaining the desire to receive a quid pro quo, the government does so at its own risk that statements made by the defendant will not be admissible against him at trial. The government's contention that plea bargaining has not commenced is to be evaluated according to the standard of "caveat prosecutor".[8]

The Supreme Court in *Santobello* expressly recognized that promises made by the government must be fulfilled. *Accord, United States v. Millet,* 559 F.2d 253 (5th Cir. 1977). In *Santobello,* the defendant was indicted on two gambling charges to which he entered pleas of not guilty. The Assistant District Attorney then agreed that if the defendant would plead guilty to a lesser-included offense the prosecutor would make no recommendation as to the sentence to be imposed. Pursuant to the agreement the defendant withdrew his not guilty pleas and entered a plea of guilty to the lesser-included offense. At the sentencing hearing, a new prosecutor replaced the Assistant District Attorney and recommended the maximum sentence. The sentencing judge imposed the maximum sentence, stating on the record that the sentence was arrived at independent of the prosecutor's recommendation. Notwithstanding the effort by the trial judge to alleviate the effect of the broken promise, the Supreme Court vacated the judgment and remanded the case to the state court for further proceedings. The court specifically held that if the government makes promises or inducements which result in a guilty plea, the promises must be fulfilled. The premise underlying this rule of law as we understand it, is that all admissions made by the defendant during the course of negotiations are conditioned upon the defendant receiving that which he has bargained for.

■■ The task now at hand is to apply the law to the facts of this case. At the outset, we are confronted with the government's contention that because Geders did not actually offer to plead guilty at the meeting neither *Herman* nor Rule 11(e)(6) of the Federal Rules of Criminal Procedure is applicable to this case. We hold that this contention is without merit because we do not choose to draw the line so hard and fast. To hold that statements made by a defendant during a meeting with government officials are plea-related only if the defendant actually offers to enter a plea would encourage the "shouted offer to plead"[9] only "after the horse is out of the barn"[10] denounced by Judge Gee in his concurring opinion in *Herman* and by the government in its brief. More importantly, such a holding would elevate form over substance. Although the facts of *Santobello* likewise evince an actual guilty plea, the holding of *Santobello* that the government is bound by its agreement with the defendant should apply regardless of whether the defendant has offered to plead guilty.

■■ Having concluded that statements made by a defendant can be protected by the rule forbidding the use of statements made during plea bargaining even though no actual offer to plead appears in the record, we turn to the question of whether Geders' statements are entitled to such protection. It can not be disputed that Geders attended the meeting with the desire to receive something in return for the information he supplied to the government. The record is unclear concerning the nature of the carrot held out to the defendant as the testimony of the government's witnesses is in dispute,[11] but in any event, it is not our

---

8. This phrase was coined by my learned colleague, Judge Goldberg, at 544 F.2d 796 and means "let the prosecutor beware."

9. 544 F.2d at 800.

10. *Id.*

11. Assistant United States Attorney Blasingame testified that Geders was willing to discuss his activities with Pedro Alvarez because he wanted to avoid indictment for these Alvarez-related activities. Blasingame further testified that no promises were made to Geders other than that there would be no discussion of

duty to resolve this factual dispute. It is our responsibility, however, to determine whether plea bargaining had commenced. If so, the defendant's inculpatory statements are inadmissible in this case.

Geders attended the meeting with the expectation of receiving something in return for the information he was willing to give. There is insufficient evidence in the record to dispel the likelihood that the government would have reduced the charges against Geders or even dropped the charges altogether if he had provided sufficient evidence to build a good case against Alvarez. Customs officer Miller testified that he understood one of Geders' motives for attending the meeting to be to help himself in his pending case. With this factual setting in mind, it is clear that the government elicited the admissions that were utilized against Geders in the give-and-take of the negotiating room. We refuse to require the defendant to use a preamble to demarcate the beginning of plea bargaining. This was clearly denounced in *Herman.* Measured against the standard of caveat prosecutor, we conclude that Geders' statements were sufficiently connected with and relevant to the plea bargaining process that they are within the ambit of Rule 11(e)(6) of the Federal Rules of Criminal Procedure as interpreted by this court in *Herman.*[12] The application of a more exacting standard could greatly decrease the utility of the plea bargaining process, recognized in *Santobello* as being an essential component of the administration of criminal justice. We therefore conclude that the district court erred in permitting the use of Geders' statements as these statements were inadmissible for any purpose in this case.[13]

We further conclude that even if we were to take the position that Geders' statements were not in connection with and relevant to plea bargaining, the defendant's conviction must be reversed because the government violated the basic principle of *Santobello* in using his statements against him. The government acknowledged in their brief and at the trial that the meeting with Geders was arranged so that information pertaining to the activities of Pedro Alvarez could be acquired. The government wanted to short-cut the investigatory process by taking advantage of the information Geders

---

his pending case. Customs officer Miller testified that although he could not recall specifically what he promised Geders prior to the meeting, if anything, his usual practice was to inform the cooperating defendant that although he couldn't make any promises, the defendant's cooperation would be made known to the United States Attorney's office. Contrary to Blasingame's understanding as to why Geders was willing to discuss his activities with Alvarez, Miller testified that he understood Geders' motivation to be two-fold. First, Geders wanted to help himself out in his pending case, and second, Geders wanted to retaliate against Alvarez due to the falling out which had occurred between them. Geders testified that his sole motivation was to help himself out in his present case.

**12.** This court's recent case of *United States v. Robertson,* 560 F.2d 647 (5th Cir. 1977), is distinguishable because the inculpatory statements made by the defendant in *Robertson* were for the purpose of obtaining leniency for a third party and not for the defendant. The statements thus were not in connection with and relevant to plea bargaining. This court did recognize in *Robertson* that:

In situations where the defendant enters into negotiations about his own plea, Fed.R. Crim.P. 11(e)(6) and Fed.R.Ev. 410 render inadmissible testimony relating to such negotiations, if the negotiations fail and the defendant goes to trial. 560 F.2d at 651.

**13.** We find no merit in the government's argument that the statements are admissible for impeachment purposes under *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and its progeny. The only instances in which plea-related statements are admissible are prescribed in Fed.R.Crim.P. 11(e)(6). The Rule provides in pertinent part:

. . . However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

Nor can the government find solace in the broader provision of proposed Rule 410 of the Federal Rules of Evidence which was superseded by Rule 11(e)(6) of the Federal Rules of Criminal Procedure and never came into effect. *See United States v. Martinez,* 536 F.2d 1107 (5th Cir. 1976).

could supply. This is a commendable method but, as in the case at bar, is often conditioned upon the government making concessions in return. As we have stated, the evidence is in dispute as to the precise nature of the inducement, if any, offered to Geders. The government does not dispute, however, that Geders was promised that his pending case would not be discussed at the meeting. We are firmly of the opinion that under the facts of this case, wherein the defendant met with the Assistant United States Attorney and other government investigators for the purpose of giving information which the government wanted in a compelling way in return for a quid pro quo, that promising him his pending case would not be discussed is indistinguishable from promising him that anything he says at the meeting will not be used against him in that case. The court in *Santobello* left no doubt as to the binding nature of promises made by the government in return for a guilty plea. The rule of *Santobello* dictates that the government likewise be bound by its promises that statements made by the defendant will not be used against him. This is merely the application of *Santobello* in a factual setting divorced from the confines of plea bargaining and serves to promote fairness in the administration of criminal justice.

▪ We are mindful that the record supports a factual finding that Assistant United States Attorney Blasingame went through the formal act of informing Geders of his *Miranda* rights. However, we refuse to sanction governmental conduct consisting of the giving of a promise (that nothing the defendant says will be used against him), which, when followed by a ritualistic retraction, places the government in the position of "heads we win, tails you lose."

▪ We simply cannot say that the error committed by the district court was harmless beyond a reasonable doubt within the meaning of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Although the record reflects that the government introduced other testimony concerning the subject matter contained in Geders' statements, we cannot conclude that this testimony alone would be sufficient to rebut the defendant's entrapment defense.

▪ The defendant has raised several other issues in this appeal. He contends that the district court erred in denying his motion to take the pretrial deposition of a witness who resided outside the United States, in refusing to permit him to present surrebuttal testimony, and in denying his motion for mistrial due to alleged prosecutorial misconduct in failing to produce material bearing on Randy Kilgore's status as a confidential informant. The crux of this final contention is that he was deprived of effective cross-examination of Kilgore. We find no merit in defendant's contention that the district court erred in refusing his motion for a continuance in order to take the pretrial deposition. We need not reach defendant's contention that the district court erred in refusing to permit him to present surrebuttal testimony as we have determined that the statements made by Geders were inadmissible, and of course, will likewise be barred in any further proceedings. Finally, we express no opinion as to the alleged failure to make the disclosure as to Kilgore's status as a confidential informant as the defendant now has access to the material in question and will have this material available upon remand of this case.

## CONCLUSION

We conclude that the district court committed reversible error by permitting the introduction of the defendant's statements because the statements were plea-related, and second, because the government violated its duty under *Santobello* by using said statements at the trial. Accordingly, the judgment against the defendant is reversed and this case is remanded for a new trial.

REVERSED & REMANDED.

DYER, Senior Circuit Judge, dissenting:

I respectfully dissent.

In this unique situation the defendant, after indictment, voluntarily appeared at

the prosecutor's office, voluntarily waived the presence of his counsel, and after a *Miranda* warning, voluntarily gave information concerning his activities in an unrelated criminal matter that would incriminate a third party (Alvarez) who the government was about to prosecute. None of the information disclosed by the defendant was, at that time, relevant to the prosecution of the defendant in this case. In fact, the government attorney refused to discuss anything that bore upon this case with the defendant. The information became relevant at the trial, however, because the defendant raised the defense of entrapment and because his testimony was inconsistent with his prior statements, thus raising a credibility issue.

There is not one iota of a suggestion that there was any plea bargaining in this case. The defendant never made a tentative or firm offer to plead prior to or during the conference, and indeed, during formal plea bargaining before trial no agreement for a plea was reached. The prosecutor was properly adamant from the very beginning of the conference " . . . that we would not discuss anything whatsoever to do with this particular case . . .." The most charitable view of the defendant's characterization of his intentions is that by being helpful in giving information about his dealings with Alvarez in an unconnected matter it could help him in this case. The majority votes that there is no evidence that the government offered to discuss this case, and it is undisputed that the defendant never wavered in his steadfast position that he would go to trial. We are thus left to speculate how the defendant thought the information would help him in this case (although it might well have helped him extricate himself from charges of being a co-conspirator with Alvarez in an unrelated proceeding). The most favorable inference that may be drawn for the defendant is that someone would tell the Judge at the time of sentencing, if, as and when the defendant was convicted in this case, that he had cooperated with the authorities concerning an unrelated prosecution of another individual.

To transpose the information given by the defendant that was not at that time relevant to these proceedings to a plea bargain that would bar the information when it was attempted to be elicited because it became relevant rebuttal evidence when the defendant invoked the defense of entrapment and put his credibility in issue is, in my opinion, an unwarranted extension of, or perhaps obliterates any standard for plea bargaining.

I am unwilling to stretch the holdings in the factually dissimilar cases of *Santobello* and *Herman* to the precise issue raised here. The focus in *Herman* centered on concessions from the government in return for a plea. It had nothing to do with a defendant who insists on a trial and then objects to evidence which is made admissible, not to prove his guilt, but to rebut his claim of innocent involvement and credibility.

As the majority recognizes, in *Santobello* the Court held that if the government makes promises which result in a guilty plea, the promise must be fulfilled. The premise, drawn by the majority is sound only if my parenthetical interpolation is read into it, "that all admissions made by the defendant during the course of negotiations [for a guilty plea] are conditioned upon the defendant receiving that which he bargained for." In the context of this case, there were no negotiations for a guilty plea. Moreover, neither party at the time of the conference considered the information that the defendant disclosed to be relevant to his guilt or innocence. It became relevant only when the defendant chose to raise the issue of entrapment and put his credibility on the line. Once the defendant took this tack it would pervert justice to permit him to testify inconsistently or even perjuriously without the risk of confrontation and thus be in a position to withhold the full facts from the jury's consideration.

In an analogous but even factually stronger case than the one *sub judice* the Court said:

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite

another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradictions of his untruths.

[T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility.

*Walder v. United States,* 1954, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503.

I agree with the view expressed by Judge Young when he denied the defendant's motion *in limine.* He said "[I]f there is any principle that must govern the administration of justice, it is that the truth must out. If the Court directly or indirectly permits falsehood knowingly to go to the trier of the facts, then the administration of justice has been distorted to the point that it is completely ineffective." This is. simply a reaffirmation of the well established principle that "Every defendant is privileged to testify in his own defense, or refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Harris v. New York,* 1971, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 for "[w]e are, after all, always engaged in a search for the truth in a criminal case so long as the search is surrounded with the safeguards provided by our Constitution." *Oregon v. Hass,* 1975, 420 U.S. 714, 722, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570.

I agree with the majority that there is no merit in the defendant's contention that there was error in the denial of his motion for continuance. I am also convinced that the defendant's argument that the district court abused its discretion in refusing to permit him to present surrebuttal evidence is groundless. "[I]t is within the trial court's sound discretion to deny petitioners right to a rebuttal witness, and on the record before us we find no abuse of discretion." *Hampton v. Hauck,* 5 Cir. 1967, 383 F.2d 389.

Finally, it is enough to say that any failure of the government to disclose Kilgore's status as a confidential informant was cured by the government making available the material in question during the course of the trial and in time for the defendant to fully utilize it. *United States v. Decker,* 5 Cir. 1976, 543 F.2d 1102, 1105.

I would affirm the judgment of conviction.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judges.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument. The Clerk will specify a briefing schedule for the filing of supplemental briefs.