[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 4, 2006
THOMAS K. KAHN
CLERK

No. 05-13662
Non-Argument Calendar

_____

D. C. Docket No. 04-00006-CR-1-MMP-AK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SANDY EUGENE JOHNSON,
a.k.a. Master (8),

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 4, 2006)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Sandy Eugene Johnson, a.k.a. Master (8), appeals his 188-month sentence, imposed after he pled guilty to conspiracy to possess with intent to manufacture, distribute and to possess with intent to manufacture and distribute 5 kilograms of cocaine and 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846. On appeal, Johnson argues that the district court violated Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 by using statements made to the government during plea negotiations to calculate the drug quantity attributable to him at sentencing. Alternatively, he argues that he gave the statements involuntarily because they were based on promises of leniency that the government failed to fulfill. For the reasons set forth more fully below, we affirm.

Johnson entered into a plea agreement, and as part of the plea, Johnson agreed to "cooperate fully and truthfully" with the government and to provide the government with "complete and truthful debriefings . . . involving any matter under investigation. The agreement specifically stated that: "If all terms and conditions of this agreement are satisfied and there exists no cause for revocation as outlined in Section 3, any statements made by [Johnson] pursuant to this agreement will be treated by the United States as given under Rule 11(f), Federal Rules of Criminal Procedure, Rule 410, Federal Rules of Evidence, and Sentencing

2

Guidelines § 1B1.8." The agreement provided in Section 3 that, if the agreement was revoked, "All statements, information and other evidence provided by [Johnson] pursuant to this agreement or under Rule 11, Federal Rules of Criminal Procedure, may be used against the defendant in any proceeding in this or any other action." The plea of guilty, however, would stand even if the agreement were revoked.

Furthermore, as part of the agreement, Johnson understood that "any prediction of the sentence which may be imposed is not a guarantee or binding promise." The government retained sole discretion to determine whether Johnson had provided substantial assistance, and if the assistance was received and the terms of the agreement otherwise met, the government would file a motion under either 18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1, with the ultimate discretion to grant the motion vested in the district court. The agreement was signed by Johnson and his attorney.

Prior to sentencing, the government filed a motion to declare the plea agreement breached because Johnson had violated the terms of the agreement. After a hearing, the district court concluded that "while the defendant was initially cooperative he has since not been forthcoming regarding contacts with police, a trip to Orlando, his association with various individuals and in other matters."

3

Thus, the government's motion was granted. At sentencing, Johnson conceded that the agreement had been breached.

A presentence investigation report ("PSI") was created, but at sentencing, the government, which had not filed any objections to the report, stated that, at the time the PSI came out, the drug quantity attributed to Johnson was a "conservative estimate" of 27.63 kilograms, for a base offense level of 34, but in light of the plea agreement being breached, the government was free to use Johnson's statements, which would place the drug quantity over 50 kilograms. Thus, the government argued that the PSI's base offense level should be 36, not 34. Johnson objected to the government's new calculation, and the court decided to continue the sentencing so that the government could more adequately set forth the amount of drugs it believed Johnson was responsible for, and so that Johnson would have time to prepare.

The PSI was then revised, and set Johnson's base offense level at 36 based on 75.75 kilograms of cocaine pursuant to U.S.S.G. § 2D1.1(c). No specific offense characteristics, enhancements, or adjustments were made, giving Johnson a total offense level of 36. Johnson was assessed one criminal history point, placing him in criminal history category I. Thus, his advisory guidelines range was set at 188 to 235 months. No new objections were lodged to the report.

At the continued sentence hearing, the government asserted that it no longer supported or recommended a safety-valve reduction to Johnson's sentence in light of his failure to be complete and truthful and new evidence indicating that Johnson wasn't going to provide the government any information about certain individuals. The government then called Agent Vance Gillis, who testified that he interviewed Johnson nine times in Rule 11 proffers. Gillis's testimony established that Johnson had been involved with more than 50 kilograms of cocaine. The government also proffered the testimony of Larry Gaines, an inmate who was bunked with Johnson. He testified that, after the first sentencing hearing, Johnson made a statement to the effect that he wouldn't implicate his "boys" in order to get a safety-valve reduction.

Johnson also took the stand, and admitted that, at the beginning of the government's investigation, he was not "completely truthful," as the government had alleged.. He also admitted that, with respect to one of the individuals under investigation, he had minimized the amount of drugs dealt because of his personal relationship with that individual.

At the close of the hearing, the government stated that it could not, in good faith, support a safety-valve reduction because it was not sure that Johnson had been completely truthful and fully cooperative, in addition to having breached the

plea agreement. Johnson admitted to having breached the agreement, but argued that the government's evidence regarding drug quantity, based on the statements made during Rule 11 proffers, was not fully accurate. No objection was ever made that the use of the statements violated Rule 11 or that his statements were involuntary.

The district court found that Johnson was responsible for somewhere between 50 and 150 kilograms of cocaine, and, therefore, his base offense level was 36 with a corresponding guidelines range of 188 to 235 months' imprisonment. Noting that the guidelines were not binding and that it had considered the factors set out in 18 U.S.C. § 3553(a), the court then sentenced Johnson to 188 months' imprisonment.

On appeal, Johnson argues that the district court used inadmissible statements made to the government during plea negotiations to enhance his offense level based on drug quantity. He further argues that his admissions about drug quantity were involuntary because they were coerced by the government's promise to seek a sentence reduction. Specifically, Johnson argues that Fed.R.Crim.P 11(f) and Fed.R.Evid. 410 prevent statements made during plea negotiations from being introduced against the person making the plea, and, therefore, the government's and district court's use of those statements to find drug quantity was

6

impermissible. He further argues that he only pled guilty and admitted to the drug quantity at issue because the government had agreed to a reduced sentence, and, therefore, his statements were involuntary in light of the fact that no sentence reduction was received. Lastly, Johnson argues that, under the Fifth Amendment, his statements were involuntary because, under the totality of the circumstances, he reasonably believed that he would receive something back from the government.

Federal Rule of Criminal Procedure 11(f) provides that: "The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed.R.Crim.P. 11(f). Federal Rule of Evidence 410 provides, in relevant part, that " any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding" pleas of guilty or nolo contendere is not admissible against a defendant in any civil or criminal proceeding. Fed.R.Evid. 410(3).

In this case, Johnson did not object to the use of his Rule 11 proffers at sentencing or that his statements were given involuntarily, but only challenged the factual accuracy of the drug quantity attributed to him. Accordingly, we will review only for plain error. "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is

plain, and (3) that affects substantial rights." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied 125 S.Ct. 2935 (2005) (quotation and citation omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

In the instant case, there was no error, plain or otherwise, because Johnson's plea agreement clearly stated that, in the event of a breach, his Rule 11 proffers would be used against him, and the agreement contained no promises. "Plea bargains, we have recognized, are like contracts and should be interpreted in accord with what the parties intended." United States v. Rubbo, 396 F.3d 1330, 1334 (11th Cir. 2005) cert. denied 126 S.Ct. 416 (2005). Furthermore, the Supreme Court has held that, "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." United States v. Mezzanatto, 513 U.S. 196, 210, 115 S.Ct. 797, 806, 130 L.Ed.2d 697 (1995).

The agreement in this case explicitly stated that, if revoked, "All statements, information and other evidence provided by [Johnson] pursuant to this agreement or under Rule 11, Federal Rules of Criminal Procedure, may be used against the

8

defendant in any proceeding in this or any other action." It is undisputed that Johnson breached the agreement by not providing "complete and truthful" information to the government, and the government had the agreement revoked by the district court. Furthermore, the fact that Johnson's trial counsel did not object to the Rule 11 statements being offered at sentencing indicates that his lawyer, who signed the agreement himself, believed the government was within its rights to present the statements. See, e.g., United States v. Pielago, 135 F.3d 703, 710 (11th Cir. 1998) ("[t]he fact that Verona's trial counsel did not object to Hechavarria's testimony indicates that her lawyer, the same lawyer who negotiated the proffer agreement for Varona, believed then that the government was within its rights to put Hechavarria on the stand."). As the Sixth Circuit has persuasively held, "a defendant who breaches a plea agreement forfeits any right to its enforcement." United States v. Wells, 211 F.3d 998, 995 (6th Cir. 2000). Accordingly, the use of Johnson's statements proffered under Rule 11 for the purposes of the plea agreement was not in error, plain or otherwise.

To the extent Johnson argues that his statements were involuntary because they were based on a promise that the government broke, the statement of law he uses is correct: where the government makes a promise that induces a defendant to plead guilty, that promise must be fulfilled. See Santobello v. New York, 404 U.S.

9

257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); United States v. Millet, 559 F.2d 253, 256-57 (5th Cir. 1977). Johnson also argues in his reply brief that his negotiations were "obviously undertaken in contemplation of a guilty plea," and should be characterized as "confession negotiations," citing United States v. Taylor, 792 F.2d 1019, 1026 (11th Cir. 1986).

First, as to the "confession negotiations," Johnson's argument is wholly without merit. In Taylor, the negotiations were "obviously not undertaken" in contemplation of a guilty plea, and, therefore, the Fifth Amendment self-incrimination clause governed the issue there. Id. at 1026 n.4 (emphasis supplied). Such is not the case here, and the Fifth Amendment argument is not applicable. Moreover, the government in this case made no promises to Johnson. As the plea agreement stated, the government retained "sole discretion" to determine whether Johnson had provided substantial assistance, and only if that assistance was received and the terms of the agreement otherwise met would the government file a substantial assistance or safety-valve motion. The language contained in the agreement was not ambiguous, and there is no affirmative evidence in this case that the government made any sort of promise to Johnson or that the agreement was entered into involuntarily. See Mazzanato, 513 U.S. at 210, 115 S.Ct. at 806.

Furthermore, it is noted that if anyone broke a promise in this case, it was

10

Johnson, who failed to give complete and truthful information to the government - a primary reason why the government moved to have the plea agreement revoked and refused to recommend a substantial assistance or safety-valve reduction. Accordingly, Johnson's argument regarding the government's failure to follow through on a promise and improper use of Rule 11 proffers lack merit. We, therefore, affirm.

**AFFIRMED.**