**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jose Luis SUAREZ, Carlos Rafael Calleja and Delio Eloy Marin, Defendants-Appellants.**

No. 79–5085.

United States Court of Appeals, Fifth Circuit.

Dec. 17, 1979.

Jack R. Blumenfeld, Miami, Fla., for defendants-appellants.

Douglas J. Titus, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before FAY, RUBIN and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

A jury convicted the three defendants of conspiring to import and to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 846 and 963. The defendants now claim there was insufficient evidence of their guilt to justify submission of the case to the jury. Our review of the evidence convinces us that a reasonable jury could find these defendants guilty beyond a reasonable doubt. We therefore affirm their convictions.

## THE FACTS

On the afternoon of June 17, 1978 two commercial fishing boats, the Southern Star and the Last Dime, came across the Silver Queen, a vessel in distress approximately fifteen miles offshore in the Gulf of Mexico. The passengers on the Silver Queen—defendants Jose Suarez, Carlos Calleja, and Delio Marin, and an unidentified female [1] —flagged down the Southern Star and said they wanted to get off the Silver Queen because it was sinking. Captain John Kahle of the Southern Star notified the Last Dime that he was aiding a vessel in distress, and the Last Dime relayed this information to the Coast Guard. Meanwhile, the Silver Queen passengers boarded the Southern Star, bringing with them a Loran navigational instrument and two attache cases. Captain Kahle informed the defendants that the Coast Guard had been called; then, out of concern for his boat and his charter, he suggested that the defendants reboard the Silver Queen.[2]

After spending a few minutes aboard the Southern Star, the three defendants reboarded the sinking Silver Queen and took off in a southeasterly direction, leaving behind their female passenger and the safety of the Southern Star and the Last Dime. Some time after the Silver Queen's departure, the captain, mate, and two passengers from the Southern Star observed persons on board the Silver Queen throwing "bales" or "rectangles" overboard into the water. The testimony presented by the government indicates that the Southern Star was between one hundred and several hundred yards away from the Silver Queen when the jettisoning of the "bales" was observed. None of the four witnesses from the Southern Star was able to identify any one particular defendant throwing bales off the Silver Queen, and none testified to seeing any bales of marijuana on board the Silver Queen while it was in close proximity to the Southern Star.[3]

The individuals aboard the Southern Star continued to watch the defendants discharge bales into the water until the Silver Queen was out of sight. Several minutes later a Coast Guard helicopter arrived in the vicinity of the Silver Queen. The helicopter pilot observed the vessel come to a sudden stop, and he noted clusters of bales floating in the water about a mile behind the Silver Queen. When two Coast Guard cutters arrived on the scene two hours later, the bow of the Silver Queen was partially submerged and the defendants were seated on the cabin rooftop. One of the cutters took the defendants on board while the other cutter picked up the floating bales of what was later determined to be marijuana. After the Silver Queen was evacuated, a Coast Guard officer boarded the vessel to salvage gear and possible evidence, but he returned to the cutter when he observed water coming up into the cabin. In the few minutes he spent on the Silver Queen, the officer found no evidence that any marijuana had been on board.[4] An unsuccessful attempt was made to tow the Silver Queen, which subsequently sank.

Once aboard the Coast Guard cutter, defendant Calleja identified himself as captain of the Silver Queen and related that the defendants had been fishing when heavy seas cracked the keel of the boat, which then began to take on water. When a bale of marijuana was placed near him on the Coast Guard cutter, Calleja indignantly asked if the Coast Guard was trying to

1. The unidentified female passenger on the Silver Queen is not a defendant in this case.

2. Captain Kahle testified that he might have suggested the defendants reboard their vessel because "I was a bit leery of—of their intentions, and wished to get 'em off my boat. . . [W]hen I mentioned that the Coast Guard was on its way, it seemed to be—you know, more nervous. And then, thinking of the attache cases, I became a little apprehensive, and then everything started going through my mind, and having a charter on board, I just—I just decided that I would rather have them on their boat." Record, Vol. 2, at A–61, A–62.

3. Government witnesses observed only a fish box or cargo hatch on the Silver Queen, along with a dead fish and fishing reels and lines.

4. The Coast Guard officer detected no marijuana residue or odor on either the boat or the defendants.

frame the defendants by saying the bale came from the Silver Queen.[5]

The three defendants were taken to the Middle District of Florida, where they were arrested, indicted, tried and convicted of conspiracy to import marijuana and conspiracy to possess marijuana with intent to distribute it.

## THE LAW

The defendants in this case argue that the trial court erred in denying their motion for judgment of acquittal based on insufficiency of the evidence. In reviewing the denial of such a motion in a criminal case based on circumstantial evidence, our task is to determine whether, taking the view most favorable to the government, reasonable minds could conclude that the evidence is inconsistent with any hypothesis of the accused's innocence. *United States v. Edwards,* 488 F.2d 1154, 1157 (5th Cir. 1974). The test is not whether the trial judge or the appellate judge concludes that the evidence fails to exclude every reasonable hypothesis of innocence, but rather whether the jury might reasonably so conclude. *United States v. Smith,* 493 F.2d 24, 26 (5th Cir.), *cert. denied,* 419 U.S. 856, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974).

We first consider the defendants' claim that the evidence did not exclude every reasonable hypothesis of innocence as to whether the marijuana found floating in the Gulf of Mexico and recovered by the Coast Guard was in fact previously on board the Silver Queen. None of the government's witnesses testified to seeing any marijuana on board the Silver Queen, and no residue was found on the boat. We find, however, that the testimony that defendants were observed throwing rectangular "bales" in the water, coupled with the proximity of the bales to the Silver Queen and the absence of any in the water prior to

the defendants' activities, provide sufficient evidence from which a jury could reasonably conclude that there was marijuana aboard the Silver Queen.[6]

Counsel for the defendants conceded at oral argument that if forty-seven bales of marijuana were on board the Silver Queen, it would be reasonable to conclude that any individual on board would have had to know of its presence. With this concession in mind, we turn to defendants' claim that the evidence was insufficient to connect any one defendant to the alleged conspiracy. Defendants contend that the government failed to present evidence of an agreement between two or more of them to act together in committing the offense charged. They also cite the absence of any showing that the bales were thrown overboard with the knowledge that such an act was in furtherance of the alleged conspiracy. We find the defendants' arguments unpersuasive.

To achieve a conviction for conspiracy, the government has the burden of proving an agreement among the three defendants, the intended purpose of which is a violation of United States law. The essence of conspiracy is agreement. *United States v. Conroy,* 589 F.2d 1258, 1269 (5th Cir. 1979). The government must establish that each individual defendant is a culpable member of a conspiracy, by proving that each defendant knew of the agreement and, with that knowledge, voluntarily participated in the agreement. *United States v. Michel,* 588 F.2d 986, 995 (5th Cir. 1979). Knowledge of the conspiracy must be clear and unequivocal, but can be inferred from the circumstances and conduct of the parties involved. *United States v. Conroy,* 589 F.2d 1258, 1269 (5th Cir. 1979).

Relying on our decision in *Roberts v. United States,* 416 F.2d 1216 (5th Cir. 1969),

---

5. None of the defendants took the stand or presented any evidence at trial. An officer aboard the Coast Guard cutter testified to Calleja's statements.

6. Counsel for the defendants conceded at oral argument that a jury could conclude or hypothesize that the marijuana was on board although

he thought such a conclusion was belied by the facts that 1) nobody saw marijuana aboveship, and 2) although more than a ton of marijuana was allegedly on board the Silver Queen while the vessel was tied up to the Southern Star, the stern water line remained above water.

defendants argue that even if any individual defendant knew of the conspiracy, associated with guilty parties, and attempted to destroy the bales of marijuana, there was no evidence to permit the jury to reasonably exclude the hypothesis that one or more defendants threw bales overboard for reasons not aimed at furthering the conspiracy. We agree that the mere jettisoning of the bales of marijuana is not sufficient evidence to support the conspiracy convictions in this case. Other aspects of the defendants' behavior, however, yield sufficient evidence to send the case to the jury.

The government presented testimony that the defendants left the Silver Queen and boarded the Southern Star. Upon learning that the Coast Guard had been called, the defendants voluntarily left the safety of the Southern Star to return to a sinking vessel. The sinking vessel then took off, leaving the vicinity of the other two fishing boats which could have provided aid while the defendants awaited the Coast Guard. Since (as defense counsel concedes), the jury could reasonably conclude that all three defendants had to know of the marijuana on board the Silver Queen, their voluntary return to the Silver Queen under the circumstances is sufficient evidence to support the jury's conclusion that the defendants were in fact members of a conspiracy and had agreed to do something with the marijuana on board their boat.

We find that the evidence of guilt in this case meets the minimum standards set forth in *United States v. Cadena,* 585 F.2d 1252 (5th Cir. 1978), in which we affirmed the convictions of crew members of a vessel engaged in marijuana smuggling. The defendants in *Cadena* claimed they did not know the purpose of the voyage when it began, and that they were compelled at gunpoint to take the contraband aboard. The evidence suggested that the crew sailed the heavily laden vessel for forty-five days to a rendezvous point without apparent compulsion. There was direct testimony that at the vessel's destination, two hundred miles off United States shores, members of the crew transferred one hundred fifty bales of marijuana from their freighter to an American vessel. While specific evidence against any individual member of the crew was circumstantial, we concluded that the facts allowed us to confirm their convictions. We think that in the instant case the voluntary return of the three defendants to a sinking boat which a jury could reasonably conclude had marijuana on board surpasses the quantum of evidence we found in *Cadena.*

Defendants' reliance on *United States v. Reyes,* 595 F.2d 275 (5th Cir. 1979), is misplaced. The only evidence adduced against the four defendants in *Reyes* was their presence on an airplane which had allegedly carried marijuana. The government suggested during oral argument that one or more of the defendants must have pushed the marijuana bales out of the aircraft into the Gulf of Mexico and then smeared the interior with pineapple to mask the odor. Even assuming the correctness of the government's premises, however, there was no direct testimony that any particular defendant participated in ejecting the bales or masking the odor. In the instant case there is a similar absence of direct testimony identifying the particular defendants who threw bales off the Silver Queen. However, here, unlike in *Reyes,* there is sufficient evidence of other behavior by all three defendants to warrant the jury's convictions. After learning that the Coast Guard was en route, each of the three defendants voluntarily left the safety of a rescue boat to reboard a disabled vessel, knowing that the vessel was laden with marijuana. The vessel was then removed from a position of safety and one or more defendants were observed throwing "bales" overboard. From this pattern of behavior a jury could reasonably find that each defendant was a member of a conspiracy as alleged here. The judgment is AFFIRMED.

HATCHETT, Circuit Judge, dissenting.

The heart of the offense charged in this case is the *unlawful agreement* to import and possess marijuana. It was incumbent upon the government in this circumstantial evidence case to present proof sufficient to

eliminate any reasonable hypothesis of innocence as to each of the three appellants. *United States v. Edwards,* 488 F.2d 1154 (5th Cir. 1974). It was not enough for the government to show that *someone* acted to import and to possess marijuana. The government had to show that someone acted to import and to possess marijuana *pursuant to an agreement* to do so. While it is not necessary to show the agreement by direct evidence, it is necessary that the agreement be clearly shown beyond a reasonable doubt with all reasonable theories of innocence eliminated. *United States v. Smith,* 493 F.2d 24 (5th Cir. 1974), *cert. denied,* 419 U.S. 856, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974).

The majority finds the agreement requisite here in the fact that the appellants "left the safety of the Southern Star to return to a sinking vessel." True; but the captain of the Southern Star ordered the appellants from the ship. Because this act was involuntary, it must be rejected as proof of an agreement. Even assuming the appellants voluntarily left the Southern Star, the hypothesis remains that each appellant joined the other two in an agreement to destroy the marijuana—not to import it. Additionally, since the proof was insufficient to identify the two persons throwing the bales overboard, a reasonable hypothesis remained that any one of the appellants, although aware of the presence of marijuana, never joined in any agreement or participated in any act in furtherance of its goals.

Courts must be vigilant to prevent conspiracy, an admittedly broad theory of prosecution, from becoming the "drag-net" charge for prosecutors who have suspicions but lack proof.

For these reasons, and because the controlling facts are identical to those in *United States v. Reyes,* 595 F.2d 275 (5th Cir. 1979), I respectfully dissent.