**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Natividad OCANAS, Santiago Casiano, Jr., Ramiro Gonzalez Alvarado, Rogelio Jose De La Garza and Amadeo Uresti Garza, Defendants–Appellants.**

**No. 79–5561.**

United States Court of Appeals, Fifth Circuit.

Oct. 14, 1980.

L. Aron Pena, Edinburg, Tex., for defendants–appellants.

James R. Gough, Jr., Asst. U.S. Atty., Houston, Tex., for plaintiff–appellee.

Before THORNBERRY, GEE and REAVLEY, Circuit Judges.

THORNBERRY, Circuit Judge:

From at least June 1976 through February 1977, about thirty individuals in Donna, Texas, were involved in importing marijuana from Mexico and distributing it in the United States. The conspirators floated bales of marijuana across the Rio Grande at a farm near Donna, transported them to a rented garage where they hid them in produce trucks, and shipped them to Oklahoma for sale to distributors.

The appellants were first indicted in September 1977. The indictment charged conspiracy to import and importing marijuana, and conspiracy to possess and possessing marijuana with intent to distribute, in violation of 18 U.S.C. § 2 (1976) and 21 U.S.C. §§ 841(a), 846, 952(a), and 963 (1976). In return for pleas of guilty to the first count (conspiracy to import) in this initial indictment, the government promised to drop the remaining counts and agreed to a probated sentence. Relying on this promise, appellants Ocanas, Garza, and de la Garza tendered guilty pleas, but the trial court did not accept the pleas when first tendered. The court took the pleas under advisement, ordered presentence investigations, and set a date for sentencing. Prior to the date set for sentencing and prior to the trial court's acceptance of the guilty pleas, the government obtained a superseding indictment and filed a motion to dismiss the original. Record, vol. 1, at 728. The second indictment charged essentially the same offenses as the original indictment but expanded the time period of illegal activity and added some defendants. The trial court subsequently dismissed the first indictment, never having accepted the tendered pleas.

At a jury trial, appellant Casiano was acquitted of conspiracy to import, but convicted of conspiracy to possess and possession. Appellants Ocanas, Alvarado, Garza, and de la Garza were convicted on all counts. In appealing their convictions, appellants challenge the validity of the superseding indictment and the sufficiency of the evidence against them. They also contend that the trial court erred in admitting the testimony of coconspirator Benevides, in

failing to hold a *James* hearing on the admissibility of certain coconspirators' statements, and in becoming directly involved in the prosecution of the case. Appellants Alvarado and Ocanas also contend that the trial court erred in denying their motion for severance.

For the reasons discussed below, we affirm the convictions.

## I. *The Superseding Indictment*

This court previously decided that the superseding indictment did not place appellants in double jeopardy. *United States v. Garcia*, 589 F.2d 249 (5th Cir.), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979). We now find no merit in the remaining challenges to that indictment.

### Speedy Trial

■ The indictment did not deny appellants their Sixth Amendment right to a speedy trial. That right comes into play only after indictment or arrest. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). This indictment followed the first by less than five months. Although in some cases the Due Process Clause may require dismissal of an indictment when it is shown at trial that delay in bringing the indictment caused substantial prejudice to a defendant's right to a fair trial, *id.* at 324; 92 S.Ct. at 465, appellants made no such showing, relying only on the possibility of prejudice inherent in any delay.

### Basis for Indictment

■ Appellants also complain that the government improperly secured the present indictment by using information obtained during the presentence investigation on the attempted guilty pleas to the charges alleged in the first indictment and information provided by a coconspirator named Benevides, which they contend was obtained in violation of their Sixth Amendment right to counsel.

As to the use of presentence investigation information, appellants rely on Rule 11 of the Federal Rules of Criminal Procedure, which provides that "evidence . . . of statements made in connection with, and relevant to, [pleas or offers of pleas] is not admissible in any civil or criminal proceeding against the person who made the plea or offer." Fed.R.Crim.P. rule 11(e)(6). The government denies that any statements made in the course of plea bargaining or presentence investigation were used in preparing the second indictment or in presenting it to the grand jury, and appellants made no showing to the contrary. We therefore find no merit in this contention.[1]

■ As to the use of information provided by Benevides, even assuming it was obtained in violation of appellants' Sixth Amendment right to counsel, its role in securing the present indictment provides no basis for finding that indictment invalid. An indictment valid on its face cannot be challenged merely because the grand jury acted on inadequate or incompetent evidence, or even on information obtained in violation of a defendant's Fifth Amendment privilege against self–incrimination. *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); *Lawn v. United States*, 355 U.S. 339, 349–50, 78 S.Ct. 311, 317–18, 2 L.Ed.2d 321 (1958).

### The Plea Bargain

Appellants' final and most troubling challenge to the superseding indictment is that

---

1. We think that even if they had made such a showing, Rule 11(e)(6) would be inapplicable. The language of that rule contemplates and proscribes the improper use of evidence in a subsequent *adversary* proceeding, whether civil or criminal, *against* the individual who engaged in plea bargaining. A grand jury proceeding is not an adversary hearing to determine the guilt or innocence of the accused, but an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. *United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). Appellants point out that we recently condemned the use of plea-related statements in *United States v. Geders*, 566 F.2d 1227 (5th Cir. 1978), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979). In *Geders*, however, the statements had been introduced at trial, not merely before a grand jury properly performing its investigatory function.

the government, by obtaining it, breached its plea bargain agreement. After careful consideration, we find no basis for granting relief.

Because a guilty plea waives constitutional rights, *see Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), the Supreme Court has held that a defendant is constitutionally entitled to relief when the state breaches a promise made to him in return for a plea of guilty, *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The Court refrained from deciding exactly what remedy was constitutionally required, but did state "that when a [guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499. *See also United States v. Shanahan,* 574 F.2d 1228, 1230 (5th Cir. 1978); *United States v. Grandinetti,* 564 F.2d 723, 725–26 (5th Cir. 1977).

We have previously suggested that a plea bargain is contractual in nature and that when the prosecutor breaches it the underlying basis for the plea fails. *Jones v. Estelle,* 584 F.2d 687, 689 (5th Cir. 1978); *Petition of Geisser,* 554 F.2d 698, 704 (5th Cir. 1977). We recognize that principles of contract law provide a useful analytical framework, but surely they cannot be blindly incorporated into the criminal law in the area of plea bargaining. A direct application of contract law to the mutual promises in this case arguably dictates dismissal of those counts in the superseding indictment that correspond to the counts in the first indictment that the government promised to drop in return for pleas of guilty. We reject that result in favor of one more consistent with the just and efficient administration of criminal justice.

 The danger in a pure contractual approach to plea bargaining is that it may seduce one into thinking that the plea bargain involves only two parties, the prosecutor and the defendant, when in fact the trial court plays a critical role in the process. Plea bargaining is governed by Rule 11 of the Federal Rules of Criminal Procedure. Fed.R.Crim.P. rule 11, 18 U.S.C.A. Under Rule 11, the trial court clearly retains discretion in accepting or rejecting plea bargains. *United States v. Bean,* 564 F.2d 700, 702 (5th Cir. 1977); *see also United States v. Ellis,* 547 F.2d 863 (5th Cir. 1977). That a plea bargain will result in too light a sentence under the circumstances is a sound reason for a refusal to accept it. *United States v. Bean, supra,* at 704. Only in unusual circumstances will the rejection of a plea bargain be an abuse of discretion. *Id.*

 Thus, the realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court.

We realize that appellants relied on the government's promise by tendering guilty pleas and submitting to extensive presentence investigations. A showing that the government gained some unfair advantage over them as a result of their reliance might have justified a departure from the general rule. But they offered no evidence that information provided by them in the course of plea bargaining and presentence investigation was used by the government either in obtaining the second indictment or at trial. On this record, we need not decide what sort of post–tender pre–acceptance conduct on the part of the prosecutor would warrant relief.

We find no merit in appellants' final challenge to the superseding indictment.

## II. *The Testimony of Benevides*

Appellants contend that the trial court erred in refusing to exclude the testimony of Francisco Benevides, who had been a codefendant under the first indictment. Benevides participated in jury selection with appellants Casiano and Alvarado, and admitted being privy to confidential information. Record, vol. 3, at 77. Appellants claim that at the time he was privy to this information he was in fact a paid government informant whom the government improperly used as a spy in the defense camp, in violation of appellants' Sixth Amendment right to counsel. *See Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). The record, however, is wholly insufficient to permit us to rule on this point. Appellants rely on suspicion and inference, while the record reflects virtually nothing about the nature and extent of the relationship between Benevides and the government, about what information he may have gathered and transmitted, or about the role that information played at trial. We accordingly decline to rule on this point, which appellants may raise in a 28 U.S.C. § 2255 petition.[2] *See United States v. Klein,* 546 F.2d 1259, 1262 (5th Cir. 1977).

## III. *Severance*

Appellants Alvarado and Ocanas made a pretrial motion for severance on the grounds that other defendants had prior felony convictions which if presented to the jury would, they argued, prejudice their right to a fair trial. The trial court denied the motion and we affirm.

Appellants made no effort to meet their burden of demonstrating the specific and compelling prejudice that would warrant our finding that the trial court abused its discretion in denying a severance. *United States v. Wolford,* 614 F.2d 516, 518 (5th Cir. 1980); *United States v. Salomon,* 609 F.2d 1172, 1175 (5th Cir. 1980). Further, we doubt that such an effort would have been successful. Evidence of prior criminal offenses relating to a codefendant ordinarily will not generate prejudice arising to a level that requires severance. *See, e. g., United States v. Davis,* 546 F.2d 617, 620 (5th Cir. 1977); *United States v. Perez,* 489 F.2d 51, 67 (5th Cir. 1973), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).

Appellants also claim on appeal that prejudice stemmed from the admission of evidence that appellant Garza attempted to steal a truck containing marijuana from the Department of Public Safety Office in McAllen, Texas, an offense extraneous to those for which appellants were indicted. We think that appellants' pretrial motion for severance neither embraced nor even contemplated the admission of this particular testimony. That motion was concerned only with the admission of evidence of prior felony convictions of certain codefendants, not with the admission of evidence of individual acts of particular defendants done in the course of this criminal enterprise. Record, vol. 1, at 678–79. Even assuming the issue is properly before us, we find that the trial court did not abuse its discretion in denying a severance.

## IV. *Failure to Hold a James Hearing*

Appellants argue that the trial court committed reversible error by failing to hold a *James* hearing on the admissibility of certain coconspirators' statements. *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). We find no merit in this contention.

Under *James,* a coconspirator's hearsay statement is not admissible unless the court determines that the prosecution has shown by a preponderance of the evidence independent of the statement itself that a conspiracy existed, that the coconspirator and the defendant against whom the statement is offered were members of the conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy. 590 F.2d at 582;

---

2. At oral argument, the government conceded that a § 2255 proceeding would be an appropriate way to resolve this issue. *See* Brief for Appellee, at 13–14.

Fed.R.Evid. rule 801(d)(2)(E). Although the preferred order of proof requires the showing of the conspiracy and of the defendant's connection with it before admitting declarations of a coconspirator, when the trial court determines that it is not reasonably practicable to require the showing before admitting the statements, it may admit them subject to being connected up. 590 F.2d at 582. If the court subsequently concludes that the prosecution has not made a sufficient showing, the statements cannot remain in evidence, and the judge must decide whether any prejudice arising from the erroneous admission can be cured by a cautionary instruction to disregard the statement or whether a mistrial is required. *Id.* at 583. *See also United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978); *United States v. Stanchich*, 550 F.2d 1294, 1297–98 (2nd Cir. 1977).

 The trial court here specifically found the *James* requirements satisfied as to all defendants except Casiano. Record, vol. 3, at 248–49. A review of the record supports that finding. The trial court also instructed the jury not to consider hearsay evidence against Casiano. Record, vol. 3, at 216. That evidence concerned a conversation that the witness had with appellant Garza regarding Garza's plan to steal a truckload of marijuana from the DPS office in McAllen. That plan was so unrelated to the offenses for which Casiano was convicted [3] that we fail to see how he could in any way have been prejudiced by the testimony. Under these circumstances, the trial court's instruction was more than sufficient to satisfy *James*.

## V. *Trial Court Involvement*

On reviewing the record, we find absolutely no merit in appellants' contention that the trial judge became directly involved in the prosecution and thereby created an inference of guilt. We respond only to say that our brother on the district bench acted entirely properly in doing what he could to clear up what would otherwise have been ambiguous or confusing testimony and to expedite the trial. Neither the tenor nor the number of the questions he asked opens his impartial attitude to question. Further, he cautioned the jury not to draw any inferences from his comments or questions. *See United States v. Siegel*, 587 F.2d 721, 726 (5th Cir. 1979); *United States v. Davis, supra*, at 621–22.

## VI. *The Sufficiency of the Evidence*

Appellants contend that the evidence is insufficient to support any of the convictions. We find no merit in this claim.

### *In General*

 The simplest formulation of the standard of review is whether a reasonably minded jury must necessarily entertain a reasonable doubt as to the defendant's guilt under the evidence. *United States v. Slone*, 601 F.2d 800, 802 (5th Cir. 1979); *United States v. Caro*, 569 F.2d 411, 416 (5th Cir. 1978). In other words, the standard is whether reasonable minds could have found the evidence inconsistent with every reasonable hypothesis of the defendant's innocence. *United States v. Slone, supra* at 802–03; *United States v. Henderson*, 588 F.2d 157, 161 (5th Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979). We view all the evidence and inferences therefrom in a light most favorable to the government. *United States v. Thompson*, 603 F.2d 1200, 1204 (5th Cir. 1979); *United States v. Diecidue*, 603 F.2d 535, 543 (5th Cir. 1979), *cert. denied sub nom. Gispert v. United States*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980).

 The trial court took extensive notes during trial and, before submitting the case to the jury, reviewed each count of the indictment, dismissing several for lack of proof. We have thoroughly reviewed the record and, applying the appropriate standard, find that there is no question as to the

---

**3.** Casiano was convicted of both conspiracy to possess and possession of marijuana with in-

tent to distribute it. *See* part VI *infra*.

sufficiency of the evidence against appellants Ocanas, Alvarado, de la Garza, and Garza. The evidence against Casiano, however, warrants further discussion.

### The Evidence Against Casiano

The evidence against Casiano established that a truck owned by him and containing a load of marijuana had been parked near the home of Jacinto Villarreal. Casiano arrived there, driving a pickup and accompanied by Octaviano Uresti. While Casiano waited in the pickup, Uresti instructed Villarreal to move the truck because someone had, in his words, snitched the load. Casiano then led Villarreal over to Genaro Moreno's garage. Villarreal parked the truck and, at Casiano's instruction, joined Casiano in the pickup. Casiano then carried Villarreal over to Johnny's Hideaway.

Casiano was convicted of both conspiracy to possess and possession of marijuana with intent to distribute it. The trial court denied a motion for acquittal based on insufficiency of the evidence. In reviewing the denial of that motion, we must determine whether, taking the view most favorable to the government, the jury could reasonably conclude that the evidence is inconsistent with any hypothesis of the accused's innocence. *United States v. Suarez*, 608 F.2d 584, 586 (5th Cir. 1979).

In *Suarez*, three defendants, upon learning that the Coast Guard had been called, voluntarily left the safety of a commercial fishing boat to return to a sinking vessel laden with marijuana. The sinking vessel then left the vicinity of other fishing boats that might have rendered aid pending the arrival of the Coast Guard. We held that since the jury could reasonably conclude that all three defendants had to know of the marijuana on board the doomed boat, their voluntary return to it under the circumstances was "sufficient evidence to support the jury's conclusion that the defendants were in fact members of a conspiracy and had agreed to do something with the marijuana on board . . . ." 608 F.2d at 587.

We think *Suarez* is on point. The actions of Casiano, Uresti, and Villarreal in moving the truck to a more secure location demonstrate the same sort of group activity and voluntary cooperation as that in *Suarez*. The jury was thus entitled to infer that Casiano was in fact a member of a conspiracy that had agreed to "do something" with the truckload of marijuana, and we will not disturb that conclusion.

Casiano also argues that mere ownership of a vehicle containing contraband is insufficient to constitute constructive possession. *United States v. Barrera*, 547 F.2d 1250, 1256 (5th Cir. 1977). We agree, but note that here the evidence shows more than mere ownership of the truck. Constructive possession need not be exclusive, but may be shared with others, *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973), as long as the evidence is such that a jury might reasonably infer that the person charged with constructive possession had dominion and control over the object, *United States v. Barrera, supra* at 1255. Villarreal had been instructed to follow Casiano in a truck that he knew belonged to Casiano. The jury could reasonably infer that Casiano enjoyed dominion and control over the load.

### VII. *Casiano's Conviction and Sentence*

There is no inconsistency in Casiano's being found not guilty of conspiracy to import, yet guilty of conspiracy to possess and possession of marijuana. Even if there were, each count would be considered separately, and if a conviction on that count is supported by the evidence, it may stand. *United States v. Romeros*, 600 F.2d 1104, 1105 (5th Cir. 1979), *cert. denied*, 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980); *United States v. Gipson*, 553 F.2d 453, 457 (5th Cir. 1977). As we have already said, the evidence against Casiano supports both findings of guilty.

Casiano also contends that by receiving consecutive sentences for conspiracy and possession he has somehow been punished twice for the same offense. It is beyond dispute, however, that conspiracy

362

and the substantive offense that is the object of the conspiracy are separate and distinct crimes. *Iannelli v. United States,* 420 U.S. 770, 777–78, 95 S.Ct. 1284, 1289–1290, 43 L.Ed.2d 616 (1975); *United States v. Romeros, supra* at 1105. The trial court could therefore properly impose consecutive sentences.

The judgment appealed from is AFFIRMED, without prejudice to appellants' right to seek 28 U.S.C. § 2255 relief.