UNITED STATES of America,
Plaintiff-Appellee,

v.

David ESPINOZA–FRANCO,
Defendant-Appellant.

No. 81–1202
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1982.

Herbert E. Cooper, Asst. Federal Public Defender, El Paso, Tex., for defendant-appellant.

Gloria C. Phares, Washington, D. C., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

After a trial by jury, Appellant David Espinoza-Franco was convicted of knowingly encouraging entry of illegal aliens into the United States and of unlawfully transporting these aliens, in violation of 8 U.S.C. §§ 1324(a)(2) and (4). The four-count indictment involved the illegal entry of two aliens, Salazar-Castillo and Gomez-Aparicio. The District Court imposed concurrent three-year sentences for each count but suspended imprisonment in favor of a five-year period of probation. Espinoza-Franco appeals his convictions as being based on insufficient evidence. Finding that the evidence was sufficient to support conviction on all four counts, we affirm.

This Court, in reviewing the sufficiency of the evidence in criminal cases, must view the evidence in the light most favorable to the government and must accept all reasonable inferences and credibility choices that tend to support the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); *United States v. Hinds*, 662 F.2d 362, 366 (5th Cir. 1981); *United States v. Magana-Arevalo*, 639 F.2d 226, 228 (5th Cir. 1981); *United States v. Maner*, 611 F.2d 107, 108–09 (5th Cir. 1980). Our standard of review is whether, taking the view most favorable to the government, a reasonable jury could conclude that the evidence was inconsistent with every reasonable hypothesis of innocence. *United States v. Wilson*, 657 F.2d 755, 758 (5th Cir. 1981); *United States v. Moreno*, 649 F.2d 309, 312 (5th Cir. 1981); *United States v. Rodgers*, 624 F.2d 1303, 1306 (5th Cir. 1980), *cert. denied sub nom., Bertucci Construction Co. v. United States*, 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). If the jury could not reasonably have determined the evidence excluded every reasonable hypothesis but that of guilt, we must reverse the convictions. *United States v. Hinds*, 662 F.2d at 366; *United States v. Suarez*, 608 F.2d 584, 586 (5th Cir. 1979).

II.

With the *Glasser* standard in mind, we turn to a review of the facts and the evidence produced at trial. On January 29, 1981, at about 8 p. m., two border patrol agents observed a vehicle, its back tail-light out, traveling on Paisano Street, a divided highway near the Mexican-American border in El Paso, Texas. The car suddenly made a u-turn and then stopped near a roadside park in an area notorious for illegal alien traffic. After following the car for a few blocks, the agents turned on their siren and stopped the vehicle which was being driven by Espinoza-Franco. Espinoza-Franco's wife was seated in the front seat. One of the agents observed two heads pop up from the back seat when the car was stopped. After questioning the two male passengers in the back seat the agent determined that they were illegal aliens. Espinoza-Franco told the border patrol that he thought the two men were hitchhikers. The aliens, who first corroborated this version, upon further questioning at the border patrol station, admitted that they had traveled from interior Mexico to Juarez earlier that day. The aliens, Gomez-Aparicio and Salazar-Castillo, stated that they met Espinoza-Franco in a park in downtown Juarez about noon that day and made arrangements with him to cross the border. According to their testimony, Espinoza-Franco stated that he would help the aliens cross the border and get onto a train to Chicago where they hoped to find employment. The fee for this service was $300, although the aliens were not sure if this price was per person or for both and if the train fare was included. At about 6:30 or 7 p. m., Espinoza-Franco, accompanied by his wife, met the aliens and drove them to the Rio Grande River at a place where they could cross. He instructed the aliens to walk across the river and wait for him behind a large rock on the other side where he would honk three times and pick them up. He also instructed the

aliens to claim that they were getting a ride from Espinoza-Franco if the vehicle was stopped.

According to Espinoza-Franco, on the day in question he was at home with relatives in El Paso preparing a pig for roasting for a family reunion. Espinoza-Franco and his wife both stated that they had never left their home between 8 a. m. and 6 p. m. that day. Both a neighbor and a relative also verified this statement. According to Espinoza-Franco, he and his wife went to Juarez later in the evening, around 6:30–7:00 p. m., to take some food to his sister. The sister testified that Espinoza-Franco and his wife came to visit her that evening but remained with her only 10 or 15 minutes. Espinoza-Franco's wife testified that she had sent a man earlier in the day to invite the sister to the party and that they had brought the sister food when she did not come. Upon their return to El Paso, Espinoza-Franco made a u-turn on Paisano Street to go back for some beer. Hearing someone yelling and asking for a ride, Espinoza-Franco picked up the two hitchhikers and was on his way to downtown El Paso when they were stopped and arrested by the border patrol agents.

Thus the jury was presented with two conflicting stories, that of the aliens claiming a prearranged plan to cross the border, and that of Espinoza-Franco and his wife claiming to have given a ride to two hitchhikers.

### III.

■ Counts 1 and 2 concern the violation of 8 U.S.C. § 1324(a)(4) prohibiting the willful or knowing encouragement or inducement of an alien to enter into the United States. The testimony of the two aliens clearly establishes that Espinoza-Franco met them across the border near a park in Juarez and encouraged them to cross the border. He drove them to the Rio Grande River after dark, telling them to cross and wait for him in El Paso where he would pick them up. The inference of Espinoza-Franco's knowledge that the aliens were not lawfully entitled to enter the United States is amply supported by the surreptitious manner in which he met them in the park, led them to the river, and offered to assist them in exchange for $300. These same facts also support an inference of the willfulness of his activity. In *United States v. Avila-Dominguez*, 610 F.2d 1266, 1272 (5th Cir.), *cert. denied sub nom., Perez . v. United States*, 449 U.S. 887, 101 S.Ct. 242, 66 L.Ed.2d 113 (1980), under similar facts, that of prior meeting across the border and assisting transportation to the river and on the American side of the border, we found sufficient evidence to support conviction under § 1324(a)(4).

■ The convictions in counts 3 and 4 were for transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(2). The testimony by the aliens that Espinoza-Franco first met them in Juarez at noon, coordinated their illegal entry for $300, and picked them up in El Paso immediately after their crossing, as well as the apprehension near the border with the aliens as passengers, is sufficient evidence to support a verdict of transporting illegal aliens within the United States in violation of § 1324(a)(2).

■ Espinoza-Franco's main challenge to the sufficiency of the evidence is that his convictions rested on the testimony of two illegal aliens which was inconsistent, unbelieveable, and contradictory. He focuses particularly on the fact that the aliens originally told the border patrol that they had been hitchhiking, corroborating the version of the events given by Espinoza-Franco. "Only after they were threatened with one or two years of jail time, did they change their testimony." While there was some disagreement between the aliens on specifics of their account, such as whether Espinoza-Franco was with his wife or alone at the noon meeting, their testimony was neither incredible nor insubstantial and was consistent on the major facts. The jury, in finding Espinoza-Franco guilty, made a determination of credibility of the witnesses and chose to believe the aliens, rather than Espinoza-Franco. "One of the oldest established rules of Anglo-American jurisprudence is that the jury is the arbiter of

credibility of witnesses." *United States v. Cravero*, 530 F.2d 666, 670 (5th Cir. 1976). This Court will not substitute its own assessment of the truthfulness of the witness for that reached by the jury. Under our standard of review, the jury, choosing to believe the testimony of the aliens, had sufficient evidence that Espinoza-Franco was guilty.

AFFIRMED.