UNITED STATES of America, Plaintiff,

v.

Tyrone Robert SMITH and Willie M. Thomas, Defendants.

Cr. No. 84–229.

United States District Court, S.D. Texas, Houston Division.

March 31, 1986.

---

Wayne Campbell, Asst. U.S. Atty., Houston, Tex., for plaintiff.

Shirley G. Steele, Houston, Tex., for defendant Tyrone Robert Smith.

A. Charles Gaston, Houston, Tex., for defendant Willie M. Thomas.

## ORDER

McDONALD, District Judge.

### I. Introduction

The Court is called upon to determine whether the Defendants and the United States negotiated a valid Plea Bargain Agreement that is presently in effect and if so, whether the Court should compel the United States to adhere to that agreement. Counsel for Defendants Smith & Thomas assert that each has a valid Plea Bargain Agreement with the United States and asks this Court to specifically enforce that agreement. The Government [1] contends that the Court should not enforce the Plea Bargain Agreement because counsel for the Defendants failed to act upon the agreement within a reasonable period of time. As to Defendant Thomas, Assistant United States Attorney (A.U.S.A.) Campbell contends that there was no meeting of the minds with respect to the terms of the offer. This matter surfaced during the pretrial conference the day before the scheduled commencement of the trial. The Court would have hoped that the attorneys would have been able to amicably resolve their differences, however, since they remain inextricably at odds, the Court reluctantly enters this foray. Having considered the arguments of counsel, the Court finds that each Defendant negotiated a valid Plea Bargain Agreement with the Office of the United States Attorney which is enforceable and presently in effect.

Tyrone Robert Smith and Willie E. Thomas are named as Defendants in a four count indictment rendered on October 26, 1984. A third Defendant, Barbara Davis, appeared before the Court in March of 1985 and entered a plea of guilty pursuant to a Plea Bargain Agreement.

The Government takes the uncontroverted position that it made the same offer to each of the three Defendants in the winter of 1984. Counsel for Defendant Thomas

1. The Court heard from two Assistant United States Attorneys. Wayne Campbell, the Assistant United States Attorney who was scheduled to try the case and James Powers, the First Assistant United States Attorney and former Chief of the Criminal Division. The Court accepts the arguments made by both Assistant United States Attorneys as a statement of the Government's position.

appeared in Court in December of 1984 for a rearraignment and was presented a written plea agreement which provided for the entry of a plea of guilty to count two and dismissal of the remaining counts. A rearraignment was scheduled in December of 1984 for the purpose of receiving a plea of guilty and hearing the Plea Bargain Agreement from Defendant Thomas. Counsel for that Defendant and the Assistant United States Attorney Campbell appeared and the A.U.S.A. advised the court that the wrong Defendant had been directed to appear; it was his position then that the agreement had been negotiated with Defendant Smith and not Defendant Thomas whose counsel appeared at that setting. From that date until in or about June or July, 1985, counsel for the Defendants advised the Court that they attempted on several occasions to contact Mr. Campbell by telephone regarding the Plea Bargain Agreement. Finally, in June or July, 1985, counsel for Defendant Thomas was able to schedule a meeting with Mr. Campbell regarding the plea bargain agreement. Assistant United States Attorney Campbell failed to appear at that scheduled meeting. Counsel for Defendant Thomas, upon exiting the building, encountered A.U.S.A. Campbell and began further negotiations regarding the plea agreement.

The Court has not been presented with a fully executed plea of guilty incorporating the terms of the Plea Bargain Agreement. That is not unusual, for typically the attorneys and the Defendant execute that document at the time of rearraignment. With respect to Defendant Smith, what has been brought to the attention of the Court is a written but unexecuted Plea Bargain Agreement which the Government intended to offer to Defendant Smith but erroneously listed Defendant Thomas in the caption. This is the agreement that was presented to counsel for Defendant Thomas in December of 1984. At the pre-trial confer-

ence, counsel for Defendant Smith reaffirmed her acceptance of this offer.

Although no written Plea Bargain Agreement with Defendant Thomas has surfaced, except for what now appears to be the erroneously typed caption on the plea agreement presented to counsel for Defendant Thomas in December of 1984, this Defendant's counsel advised the Court at the pre-trial conference of his acceptance of the same offer presented to each of the other Defendants. Indeed, as early as June or July, 1985, when the Court's courtroom deputy called counsel for Defendant Thomas in an attempt to set the case for a trial, the Court was advised that a plea agreement had been reached.

Both Defendants want to stand by the agreement which they contend has been reached with the Government. The Government seeks to be relieved from this agreement because the Defendants failed to "act upon" this agreement. The Government takes the position that it was incumbent upon the Defendants to request a court setting for a rearraignment prior to this scheduling of the trial. Since the agreement was not acted upon within a "reasonable time", the Government contends that it may withdraw its offer. The U.S. Attorney's Office does not assert that it has a written policy with respect to the time within which an offer for a plea agreement must be acted upon, nor did it advise either of the attorneys for the Defendants that they must take actions with respect to the agreement within a certain period of time.[2]

The Court sentenced Defendant Davis in March 1985, accepting the Plea Bargain Agreement. As a gauge for what constitutes a reasonable time frame for action upon a plea bargain agreement, the Government points out that Defendant Barbara Davis appeared before the Court in March 1985 and was sentenced pursuant to the Plea Bargain Agreement. It is the

---

**2.** The Government does assert that it has a policy that it will withdraw a plea offer if it has not been accepted within seven days prior to trial. However, the Government asserts that this poli-

cy is not an issue, but rather seeks to be relieved from the agreement because of the unreasonable length of time that transpired between its negotiation and the trial setting.

failure of the Defendants to act within this time frame, instead of some six months later, that makes their actions unreasonable argues the Government.

## II. Role of the Court

■ Although the Court does not participate in the negotiation of Plea Bargain Agreements, it has a duty to supervise such agreements, insofar as it must make a determination that they are entered into voluntarily and knowingly and without duress or coercion. As a part of this duty to assure the integrity of the negotiation process, the Court likewise has a duty to enforce such agreements which it considers to be valid, although it is not bound to accept such agreements. The United States Supreme Court in *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) has recognized that plea bargaining "is an essential component of the administration of justice." It is this process as well as the agreement of the parties now before the Court, which this Court seeks to uphold.

■ It is uncontroverted that the Government and the Defendants entered into a Plea Bargain Agreement.[3] Plea agreements are contractual in nature. *United States v. Ocanas*, 628 F.2d 353 (5th Cir.1980). However, Plea Bargain Agreements entail much more than a mere offer and acceptance. Unlike contracts, Plea Bargains involve a myriad of collateral considerations such as expectations of fundamental fairness by the Defendants, efficient administration of justice, and the integrity of the Government's promises. The Government cites *Ocanas* for the proposition that either party, the Government or the Defendant, should be entitled to modify its position and even withdraw its consent to the agreement at any time prior to the moment when the plea is tendered and the agreement is accepted by the Court. *Ocanas*, 628 F.2d at 358. The Fifth Circuit in

*Ocanas* does enunciate the above proposition as being a "general rule". *Ocanas*, 628 F.2d at 358.

The *Ocanas* case is distinguished from this case because the Government dismissed the initial indictment against Defendants prior to the Court's acceptance of the plea agreements. The Government in *Ocanas* filed a superceding indictment, which the Court found was not prompted by the prior plea negotiations. The superceding indictment charged the same offenses, but expanded the time period of illegal activity and added new Defendants. *Ocanas*, 628 F.2d at 357. The additional information in the superceding indictment reasonably changed the Government's position with respect to the plea agreement and formed the basis for the Government's decision to withdraw the plea agreement.

■ In the case *sub judice*, the Government's position with respect to the Defendants has not changed. The Government simply wishes to withdraw from the plea agreements because the Defendants failed to "act on" their agreement. In a persuasive opinion by the Fourth Circuit, the Court held that an offer of plea made by the Government to the Defendant should not be withdrawn in the face of a proffered acceptance for no other reason than "a superior's second-guessing of a subordinate's judgment." *Cooper v. United States*, 594 F.2d 12, 19 (4th Cir.1979). The Government's basis for its position in the case before the Court is not any more objective, nor supported by the type of reason found in *Ocanas*. This Court considers that the *Cooper* case more closely fits the facts of this case and requires that the Government in their case should not be allowed to withdraw an accepted Plea Bargain Agreement solely on the basis that the Defendants failed to quickly "act on" the Agreement.[4]

---

**3.** The Government argues that no meeting of the minds occurred with Defendant Thomas. However, the Government was unable to recall the negotiations it had with Defendant Thomas at the June or July meeting. Defendant Thomas

on the other hand stated that an agreement was reached with the Government.

**4.** There are other factors specific to this case, which lead this Court to the above conclusion. Counsel for the Defendants contended that they

Defendants do not set cases for the Court, however, any party may request a setting and the Court has received such requests by the Government as well as the Defendants in both criminal and civil cases. Both the Government and the Defendants are responsible for notifying the Court of a plea agreement that may short-circuit the case setting process.

Moreover, countervailing policies support the acceptance and enforcement of these Plea Bargain Agreements.

First, administratively, the criminal justice system depends upon plea agreements. *See Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (where the court stated that the "disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice.") Second, acceptance of a plea agreement may contribute to the successful prosecution of other more serious offenders. Third, acceptance of a plea agreement furthers judicial economy of resources. In this case, a three day trial of the Defendants would require approximately forty veniremen and fourteen jurors, which would cost the taxpayers thirty-five dollars a day for each venireman. The total cost for the jury alone would be approximately $2,380.00. This figure does not include the cost for the Government to prosecute the matter and the cost to the taxpayers for the trial time of the two court-appointed attorneys for the Defendants. The Government subsequently agreed that this is its concern and not the Court's. Faced with a subjective departure from a plea agreement that is on the same level as the "second guessing" condemned in *Cooper,* 594 F.2d at 19, the Court considers that this is a valid consideration that it must address.

Under the particular facts and circumstances of this case, the Court is compelled

to enforce the plea agreement reached between the Government and the individual Defendants. The facts, recounted above, demonstrate that plea agreements were reached between the parties. The Court will not reject the plea agreement on the Government's contention that the Defendants failed to timely "act on" the Plea Bargain Agreement.

It is ORDERED, ADJUDGED, and DECREED that the Government's Motion to Withdraw its consent to the plea agreements is hereby DENIED and the Government is hereby ORDERED to abide by the Plea Bargain Agreements.

The Clerk shall file this Order and provide a true copy to counsel for all parties.

---

had attempted to contact AUSA Campbell on several occasions, after receiving a plea offer in the winter of 1984, to complete their plea arrangement, but they were unable to reach him.

AUSA Campbell asserted that he was very busy during the spring and summer of 1985 and that he was in and out of his office.